IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 94-50823

Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROY EDWARD BROWN,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

December 21, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Roy Edward Brown appeals his conviction of possession with intent to distribute 50 or more grams of crack cocaine on Fed. R. Evid. 404(b) grounds. We reverse.

I

A grand jury issued a superseding indictment charging Mr. Brown. Count One charged Mr. Brown of possession of crack with intent to distribute, and Count Two alleged distribution of crack. The possession charge arose out of events occurring on April 15, 1994, and the distribution charge referred to a controlled buy

occurring on April 7 of the same year.  Upon motion, the district court dismissed Count Two of the indictment because the informant who made the controlled buy could not identify the crack cocaine presented at trial as the crack he bought from Mr. Brown.

The primary witnesses against Mr. Brown in the possession charge were Kelly Hensley and Officer Dickson.  On direct and redirect examination, Ms. Hensley testified that around 7:00 on April 15 she was watching TV in her trailer when a man came running past the trailer looking scared.  It was light outside.  The man ran to a distance of 75 feet, dropped a brown paper bag, then continued on his way.  Ms. Hensley approached the bag and observed a white substance later found to be crack.  She returned to her trailer.  Fifteen minutes later, the man returned and began walking around the trailer park in an apparent attempt to find the bag. The man's search took him to within a few feet of the window of Ms. Hensley's trailer.  Ms. Hensley notified the police.  She described the man as having short hair, no beard, and no mustache, and as wearing a shirt with vertical blue and white stripes, blue jeans, white socks, and black shoes.  After a short time, the man left. Ms. Hensley called a neighbor, and the two moved the bag to a bush outside the neighbor's apartment.  The neighbor then called the police again.

Police officers eventually arrived around 7:45 to 8:00.  They took statements from Ms. Hensley, recovered the bag, and left. About a week later, Ms. Hensley went to the police station.  She viewed six or seven photographs and identified the Mr. Brown.

2

On cross-examination, Ms. Hensley testified that while she might have told the police that the man was bald, she meant that he had very little hair. She recalled that she had described the man to the police as midsized, by which she meant 5' 5" to 5' 10". She reiterated her testimony that the man was clean-shaven. She also testified that although there were no street lights or flood lights in the area other than those in a high school some 400-500 feet away, it was light outside during the entire incident, including all of the time that the police arrived to investigate the incident. She further testified that in the picture she identified, Mr. Brown was not bald and wore a mustache and hair on his cheeks. Throughout the cross-examination she remained quite certain of the identification.

On direct examination, Officer Dickson testified that he responded to a dispatcher's radio call by driving to the mobile home park where Ms. Hensley lived. The dispatcher had advised him that a citizen had called in regard to a balding black man wearing a white button-down shirt with blue stripes. As Officer Dickson approached the park, he observed a man fitting that description at some telephones adjacent to the park. He stopped the man and asked for identification. The man orally identified himself as Ray Brown and provided a date of birth. Mr. Brown explained that he had come through the trailer park from a nearby high school to use the phone to call for a ride home. After a brief time, a car arrived for Mr. Brown, and Officer Dickson sent Mr. Brown on his way. It was light throughout this encounter. After a brief return to the police

3

station, Officer Dickson returned to the trailer park, interviewed Ms. Hensley, and confiscated the paper bag.

On cross-examination, Officer Dickson testified that Mr. Brown was above 6' 1" tall. He also testified that it was dark at the time he arrived to speak with Ms. Hensley, and he had to use a flashlight to see.

Other state witnesses testified regarding the events of the evening of April 15. Ms. Hensley's neighbor generally corroborated Ms. Hensley's version of the events, including the fact that it was daylight throughout the relevant events, including the encounter with the police. Officer Chapman generally corroborated the testimony of Officer Dickson regarding the interview of Ms. Hensley, the seizure of the paper bag, and the subsequent photographic lineup. On cross-examination, Officer Chapman testified that the paper bag had been tested for fingerprints, and that the prints found on the bag had not matched those of Mr. Brown.

Still other prosecution witnesses testified as to the events of April 7, which gave rise to the distribution charge. In particular, Stacy Johnson, the person who made the controlled buy on behalf of the police, testified as to the events of that evening.

Mr. Brown called one witness, Ms. Lorene Whitson. On direct examination, Ms. Whitson testified that she had received a phone call from Mr. Brown on the evening of April 15 asking her to pick him up at a phone booth outside a trailer park. She testified that

4

at the time Mr. Brown was wearing a blue T-shirt. She further testified that for the past several years, Mr. Brown had suffered from a skin condition requiring him to wear "slithers of hair, not a beard or anything" as well as a mustache, and that his face was in this condition on April 15.

After direct examination, the prosecution approached the bench and announced its intention to ask Mr. Whitson whether she knew that Mr. Brown had previously been convicted of possession with intent to distribute crack cocaine. The district court overruled Mr. Brown's Rule 404 objection. The entirety of the cross-examination of Ms. Whitson was as follows:

> Q: Ms. Whitson, during the last 11 years that you have known Mr. Brown, were you aware that he was one and the same person that was convicted in Bell County of the offense of Possession With --
>
> [Defense counsel]: Your Honor, is there any need for me to restate the objection?
>
> The Court: No, sir.
>
> [Defense counsel]: Thank you.
>
> Q: Are you aware that he is one and the same person that was -- during that period of time, in Bell County, Texas, was convicted of the felony offense of Possession With Intent to Distribute Cocaine and went to the Texas Department of Corrections for, I believe, 11 years?
>
> A: Do I know that he had served time in prison?
>
> Q: Yes, ma'am.
>
> A: Yes.
>
> Q: For that offense, Possession With Intent to Distribute Cocaine?
>
> A: That's what was told to me, yes.
>
> [Prosecuting attorney]: That's all I have, Your Honor.

The Court: I'll need to instruct the jury.

Ladies and Gentlemen of the Jury, you can consider that evidence as evidence of character or as a propensity to commit a crime, but only on the issue of motive or opportunity or identity in this case.

At the charging conference, the prosecution agreed that Ms. Whitson's cross-examination testimony was relevant to no issue but the identity of the man Ms. Hensley saw.  In accordance with this agreement, the court instructed the jury as follows:

During the course of this trial, you have heard evidence of acts of the defendant, which may be similar to those charged in the indictment, but which were committed on other occasions.  You must not consider any of this evidence in deciding if the defendant committed the acts charged in the indictment.  However, you may consider this evidence for other, very limited purposes.

You may only consider evidence of the similar acts allegedly committed on other occasions only to determine whether you wish to accept evidence as to the identity of the Defendant as the person who committed the acts alleged in Count One of the indictment.

This is the limited purpose for which any evidence of other similar acts may be considered.

At closing, after referencing Stacy Johnson's testimony that he bought crack from Mr. Brown,[1] the prosecution stated the following:

When you look at that and you look at that evidence, who was there?  This man was there.  How do we know?  Because we've got several people that are telling us that that's who he was, that that's where he was and that's what he does.  And you look at the thing and you say, "Well, what else do we know?  We know that a person, the same persons, Roy Edward Brown, that the identity is a question in here, was previously convicted of the same offense, Possession With Intent to Distribute "Crack" Cocaine.  Does that help you with the identification?  If it does, that's what it's there for.

---

[1]  The defense objected to this argument as beyond the scope of the judge's charge, an objection we interpret as a reference to the fact that the judge had dismissed Count Two of the indictment.

6

Defense counsel argued that Mr. Hensley had misidentified Mr. Brown as the man with the paper bag.

During deliberations, the jury sent the court the following note: "We would like to know where Stacy Johnson was on 15 April[.] Did Stacy Johnson ever have short hair similar to Mr. Roy Brown[?]" The district court responded, "I cannot answer the question you have asked. You must try to make a decision based on the evidence you have." The jury found Mr. Brown guilty.

The jury found Mr. Brown guilty of the offense charged in Count One.

## II

The parties agree that Rule 404(b) governs the admissibility of the Ms. Whitson's testimony regarding Mr. Brown's prior conviction. Rule 404(b) renders inadmissable evidence of the defendant's prior convictions designed to show that the defendant committed the crime charged in the indictment, but allows the admission of such evidence to prove motive, intent, identity, or other elements of the case. In essence, Rule 404(b) prohibits the jury from inferring that the defendant committed the charged crime from the fact that he committed a past crime. The prosecution conceded below and agrees here that Ms. Whitson's testimony was admissible, if at all, as probative only on the issue of Mr. Brown's identity.[2]

---

[2] We note initially that the testimony actually introduced might well have been inadmissible under Rule 403. Even if evidence of Mr. Brown's prior conviction were admissible, we are unable to discern the relevance of the fact that Ms. Whitson knew of the conviction.

7

We review the district court's admission of evidence under Rule 404(b) under a "careful application" of the abuse of discretion standard. United States v. Anderson, 933 F.2d 1261, 1268 (5th Cir. 1991). We will not reverse a conviction on the grounds of improperly admitted evidence if the admission was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967).

We find difficult to grasp the state's argument that evidence of Mr. Brown's prior conviction for the same crime charged in Count One was probative on the issue of Mr. Brown's identity on April 15 as the man with the paper bag. While we at times affirm the admission of prior bad acts or convictions in order to show that a defendant acted according to a certain modus operandi, see United States v. Sanchez, 988 F.2d 1384, 1393-94 (5th Cir.), cert. denied, 114 S. Ct. 217 (1993), the admissibility of such testimony normally depends upon a factual similarity between the prior act and the act alleged. In this case, the jury heard no evidence of the facts surrounding Mr. Brown's prior conviction.

In other circumstances, we have upheld the admission of evidence of prior bad acts or convictions in order to show a witness's opportunity to identify the defendant, see United States v. King, 703 F.2d 119, 125 (5th Cir.), cert. denied, 464 U.S. 837 (1983), or perhaps to show that the defendant used a certain name, see United States v. Aguirre, 716 F.2d 293, 299-300 (5th Cir. 1983). None of these circumstances apply here. The only way in which Ms. Whitson's cross-examination testimony could help identify

8

Mr. Brown was through the inference that because Mr. Brown committed the crime of possession with intent to distribute before, he had done so again. This is the inference that Rule 404(b) prohibits. Ms. Whitson's cross-examination testimony was relevant to no issue other than Mr. Brown's character. <u>See</u> <u>United States v. Beechum</u>, 582 F.2d 898, 911 (5th Cir. 1978) (en banc) (stating that the first step in a Rule 404(b) analysis is to decide whether the challenged evidence was relevant to an issue other than character), <u>cert. denied</u>, 440 U.S. 920 (1979).

The admission of this evidence was not harmless beyond a reasonable doubt. The evidence in this case was not so overwhelming that the jury likely disregarded the prior conviction. Mr. Brown's theory of the case was that, while he had walked through the trailer park on that evening to use the phone, Ms. Hensley had incorrectly identified him as the owner of the paper bag. Defense counsel was able to point out certain inconsistencies in Ms. Hensley's description of Mr. Brown, but could not shake her certainty that Mr. Brown was the culprit. Nevertheless, Mr. Brown's fingerprints were not among those found on the paper bag, and Ms. Hensley was the only eyewitness.

Most important for our harmless error analysis is the fact that the comments of the district court and the prosecution exacerbated the possibility that the jury drew the prohibited inference from the evidence of the prior conviction. Immediately after Ms. Whitson's testimony, the district court told the jury that it could "consider that evidence as evidence of character or

9

as a propensity to commit a crime;" in the next breath, the court added, "but only on the issue of motive or opportunity or identity in this case." This instruction was ambiguous. The first half represented a misstatement of the law that the second half sought to correct.

The trial court's final instructions did represent a correct statement of the law. But the jury could follow these instructions only if it realized that the evidence of Mr. Brown's prior conviction had no permissible probative value on the issue of the identity of the man with the paper bag on the night of April 15. In essence, the jury had to guess that the evidence was inadmissible, and it had to do so in the face of the trial judge's instruction that the evidence was relevant to Mr. Brown's identity. Under such circumstances, the jury could only have surmised that it was allowed to consider the fact that Mr. Brown had previously been found guilty of the offense charged in Count One as evidence that he was a drug dealer, and that his status as a drug dealer made it more likely that he was the man Ms. Hensley saw on the night of April 15.

In fact, the prosecution argued exactly this theory to the jury. After referring to Stacy Johnson's testimony that Mr. Brown sold him crack, evidence relevant only to a count of the indictment the trial judge had already dismissed, the prosecution argued that Mr. Brown was present at the trailer park, carrying the paper bag with cocaine, because several witnesses testified that "that's what he does." The prosecution continued by arguing that the fact that

10

Mr. Brown "was previously convicted of the same offense, Possession With Intent to Distribute 'Crack' Cocaine" could help the jury with its disposition of the identification issue, an argument that invited the jury to draw the prohibited inference.

Finally, we note that the jury's question to the judge in the middle of its deliberations suggested that it harbored doubts as to whether Mr. Brown was the man Ms. Hensley saw on April 15. The jury questioned the judge as to Stacy Johnson's whereabouts on the night of April 15. It also asked if he had short hair at the time, in essence asking if Johnson fit the description Ms. Hensley gave to the police at the time. This note suggests that the jury was concerned about the question of Mr. Brown's identity and thought that perhaps Ms. Hensley might have seen Stacy Johnson. Under such circumstances, we cannot say that beyond a reasonable doubt the jury did not fall back on the prohibited inference that the judge and the prosecution had invited it to make.

We REVERSE Mr. Brown's conviction and REMAND for a new trial.