Kelvin J. HORTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–97–341–CR

Court of Appeals of Texas,
Waco.

Jan. 13, 1999.

J. Alan Behr, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Dist. Atty., Chief of the Appellate Division, Anne E. Swenson, Asst. Crim. Dist. Atty., Alan Levy, Asst. Crim. Dist. Atty., Chief of the Criminal Division, Anne L. Box, Asst. Crim. Dist. Atty., Fort Worth, for appellee.

Before Chief Justice DAVIS, Justice CUMMINGS and Justice VANCE.

## OPINION

REX D. DAVIS Chief Justice.

A jury convicted Appellant Kelvin J. Horton of capital murder. *See* TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon 1994). Because the State waived the death penalty, the court

sentenced Horton to life imprisonment. Horton presents four points of error in which he claims the court erred by submitting a parties instruction in the charge on guilt-innocence; the court erred in admitting evidence of an extraneous murder; the evidence is legally insufficient because the State failed to adequately corroborate an accomplice's testimony; and the court erred in admitting a close-up photograph of the victim in evidence. We will affirm the judgment.

## FACTUAL BACKGROUND

The grand jury presented an indictment against Horton alleging in pertinent part that on or about February 19, 1996 he intentionally caused the death of Tommie Steptoe, III in the course of committing or attempting to commit the offense of retaliation against Steptoe. The State presented evidence that Steptoe had testified before a Tarrant County grand jury in September 1995 and introduced a transcription of his grand jury testimony in evidence. Steptoe told the grand jury that in June 1994 Horton shot at Calvin Shawn Dooley at least three times with a nine millimeter handgun and hit him at least once. The State introduced additional testimony concerning the Dooley murder from, among others: the prosecutor handling the case; another witness to the shooting; the first officer who arrived at the scene of the offense; and the medical examiner who performed the autopsy on Dooley's body.

The State's primary witness on the Steptoe murder was Horton's accomplice, Michael Shipman. According to Shipman, Horton and he are members of the Four Trey Crip gang. Shortly before midnight on February 18, Horton, Shipman and others gathered at a nightclub in Arlington. Horton and Shipman were both armed with handguns. After the club closed early the next morning, they met in the club's parking lot with other acquaintances. Steptoe asked Horton for a ride home. Horton, Shipman, Steptoe, and a fourth person went to a Racetrac gas station seeking female companionship. The parties found some willing companions and took them to a friend's house.

Horton, Shipman, and Steptoe later left the house with Horton driving, Shipman in the front passenger seat, and Steptoe in the backseat. Horton drove into a municipal park where he "stopped the car real fast and cut off the headlights." Horton drew his .357 handgun and pointed the gun at Steptoe while yelling, "Bitch, why you snitch on me?" According to Shipman, Steptoe denied this accusation, reached for the gun, and began struggling with Horton to gain control of it. Horton and Steptoe each screamed at Shipman for help. Shipman retrieved his .380 handgun then "put [the] gun up to [Steptoe's] head and shot him." Shipman shot Steptoe four or five times. After Steptoe fell down and dropped Horton's gun, Horton retrieved the gun and shot Steptoe in the head "to make sure he was dead." Horton shot Steptoe four or five additional times as well. A sanitation worker discovered Steptoe's body later that morning and notified the authorities.

## CORROBORATION OF ACCOMPLICE TESTIMONY

Horton argues in his third point that the evidence is legally insufficient because the State failed to corroborate Shipman's testimony with respect to the aggravating element which raises Steptoe's murder to the level of a capital offense (i.e., the allegation that Horton killed Steptoe while committing or attempting to commit the offense of retaliation against Steptoe). Horton relies on two decisions of the Court of Criminal Appeals which held "an accomplice witness must be corroborated as to the element which elevates murder to capital murder." *Granger v. State*, 605 S.W.2d 602, 604 (Tex.Crim.App. 1980), *overruled by Anderson v. State*, 717 S.W.2d 622, 631 (Tex.Crim.App.1986); *Fortenberry v. State*, 579 S.W.2d 482, 486 (Tex. Crim.App.1979), *overruled by Holladay v. State*, 709 S.W.2d 194, 199 (Tex.Crim.App. 1986).

Horton acknowledges that these cases have been overruled but urges us to "reaffirm" them. However, the Court of Criminal Appeals has consistently maintained in subsequent cases that "accomplice witness testimony in a capital murder case does not require corroboration concerning the element of the aggravating offense, *i.e.* the elements

which distinguish murder from capital murder." *McDuff v. State*, 939 S.W.2d 607, 613 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). We are "duty bound" as an intermediate appellate court to apply the law as interpreted by that Court. *Flores v. State*, 883 S.W.2d 383, 385 (Tex.App.—Amarillo 1994, pet. ref'd).

■ Article 38.14 of the Code of Criminal Procedure provides that a "conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed." Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). This requirement is met "if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex.Crim.App. 1997).

■ Shipman testified that, after they shot Steptoe, Horton and he went to the apartment of Shipman's girlfriend. Upon entering, they placed their handguns on the kitchen counter. Shipman's girlfriend testified that Horton laid something bloody on the shelf as he came inside. She recalled that "[h]e had blood all over him, looked like he just had a fight. Had a scratch on his eye and blood on him." According to her, after Horton went to the bathroom and cleaned himself up he returned to the room she and others were in and said, "I killed Steptoe."

Horton's admission to Shipman's girlfriend by itself sufficiently corroborates Shipman's accomplice testimony. *See Farris v. State*, 819 S.W.2d 490, 495 (Tex.Crim.App.1990), *overruled on other grounds by Riley v. State*, 889 S.W.2d 290, 301 (Tex.Crim.App.1994) (op. on reh'g). Accordingly, we overrule Horton's third point.

## THE PARTIES CHARGE

Horton contends in his first point that the court erred in submitting a parties charge to the jury because the evidence does not warrant such a charge. He concedes that the State offered ample evidence to support his guilt as a principal but claims that his conviction must be reversed because the State offered no evidence that Shipman participated in Steptoe's murder in retaliation for any testimony Steptoe had given against Shipman. As a result, he argues "Shipman could only be convicted of this capital murder as a party, not as principal," and "because the evidence does not support ... Shipman's conviction of this capital murder as a principal, then it legally follows that the evidence does not support Appellant's conviction as a party." We do not reach the merits of Horton's complaint because the court charged the jury on Appellant's guilt both as the primary actor and as a party to the offense and because Horton concedes the sufficiency of the evidence to show his guilt as the primary actor.

■ When the charge permits the jury to convict a defendant as either the primary actor or a party and the "[defendant's] guilt as the primary actor [i]s the theory best supported by the overwhelming evidence and most fervently advanced by the State in closing arguments," any error in the submission of the parties charge is "harmless." *Teague v. State*, 864 S.W.2d 505, 517–18 (Tex.Crim. App.1993); *accord Morris v. State*, 892 S.W.2d 205, 208 (Tex.App.—Texarkana 1994, no pet.).

Horton concedes the State offered sufficient evidence to show his guilt as a primary actor. The State most fervently asserted his guilt as the primary actor in closing argument emphasizing his retaliatory motive and evidence that the fatal shot to Steptoe's head came from Horton's handgun. Based on the evidence and the State's argument, any error in submitting the parties charge was rendered harmless. Accordingly, we overrule Horton's first point.

## EXTRANEOUS OFFENSE

Horton avers in his second point that the court erred by admitting evidence of the details of the Dooley murder because such evidence, although relevant, was unfairly prejudicial. *See* Tex.R.Crim. Evid. 403, 49 Tex. B.J. 223 (Tex.Crim.App.1986, amended

1998).[1] The State responds that the evidence in question constitutes "same transaction contextual evidence" and is relevant to show Horton's motive for killing Steptoe. The State next contends that the relevance of the evidence is not *substantially* outweighed by the danger of unfair prejudice and that Horton has waived any error arising from the admission of this evidence or such error was rendered harmless because similar evidence was admitted without objection.

## PERTINENT FACTS

The record reflects that the court admitted without objection the testimony of the Tarrant County prosecutor assigned to the Dooley murder case.[2] This prosecutor testified that Steptoe cooperated in the investigation of the Dooley murder and testified before a Tarrant County grand jury about the case. He read Steptoe's grand jury testimony to the jury and a transcription of the testimony was admitted in evidence. Steptoe told the grand jury that Horton shot at Dooley at least three times with a nine millimeter handgun. He described Dooley's reaction in this manner:

> after these shots out of the car, I fell down in the back seat and I kind of raised up and I saw his car like, you know how you get scared and you try to push the gas and try to drive off. He got scared and pushed his gas and his brake at the same time. And he power braked and his back wheels were spinning, but he's moving in one spot. So I see like his hair kind of stand up like he was scared to death, you know, and I figured he probably had a bullet that hit him.

The State next called the officer who first responded to the scene of Dooley's murder. Horton obtained a running objection at this point "to any testimony at this time concerning the extraneous offense." The court granted his request. At Horton's request, the court also gave the jury a limiting instruction admonishing the jurors to consider this evidence only for the purpose of determining whether Steptoe's murder "was, in fact, a retaliation."

The officer described the crime scene including the "bullet holes in the driver's door" of Dooley's Corvette, "damage to the interior of the vehicle that was consistent with bullet damage, and a lot of blood and other stuff inside the vehicle." The State offered fifteen photographs of the crime scene in evidence over Horton's objection including a photograph of Dooley's bloodied body from waist up.

The State called another witness to the Dooley shooting, David Cooper. Horton reiterated his running objection and asked the court to remind the jury of the limiting instruction previously given. The court told the jury the limiting instruction was "still applicable." Cooper testified among other things that he saw Horton fire "five shots at least" at Dooley with a nine millimeter handgun. After that, Cooper recalled seeing Dooley "leaning over [his] steering wheel."

Dr. Nizam Peerwani testified about his findings from the autopsy of Dooley's body. The court again reminded the jury of the limiting instruction at Horton's request. Peerwani testified that Dooley never regained consciousness after the shooting and was hospitalized for twenty days before he died. Dooley had numerous gunshot wounds. His death was caused by a gunshot wound to the left side of his face which passed through the left hemisphere of his brain and lodged in the right side of the brain. Peerwani described other gunshot wounds including "one just below his left nose [and] one to the right side of his orbit or eye socket." The State admitted over Horton's objection two photographs from the

1. We cite the rules of evidence in effect at the time of Horton's trial.

2. The State presented the complained-of evidence of Dooley's murder on the third day of trial. Prior to the introduction of evidence on that day, Horton made a motion in limine outside the presence of the jury in which he requested the court to instruct the State "not to prove, outside of the deceased's testimony at the Grand Jury, any fact or element of the previous murder case." The court denied this request. *See McDuff v. State,* 939 S.W.2d 607, 618 (Tex.Crim. App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997) ("the denial of a motion in limine is not sufficient to preserve error").

Dooley autopsy which depicted the wounds described by Peerwani.

### ANALYSIS

■ We review a court's ruling on the admissibility of evidence under an abuse of discretion standard. *Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996). We will not reverse such a ruling so long as it falls "within the 'zone of reasonable disagreement.'" *Id.* at 102 (quoting *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g)).

The State argues that any error arising from the admission of the evidence in question is "harmless or waived" because evidence of a similar nature was admitted without objection. The State's use of the term "waiver" in this instance has been rejected recently by the Court of Criminal Appeals as inaccurate. *See Leday v. State,* 983 S.W.2d 713, 718 & nns. 6–8 (Tex.Crim.App.1998). Under *Leday,* a trial court's action in improperly "overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Id.,* at 716–18. In this situation, the court's improper action is "rendered harmless" by the admission of similar evidence without objection. *Id.,* at 718–19 & nns.6–8.

■ We agree in part with the State's argument. Steptoe's grand jury testimony is substantially similar to Cooper's testimony. Because the former was admitted without objection, the admission of the latter was rendered harmless. *Id.* However, we do not agree that the testimony of the officer and the medical examiner describing the crime scene and the extent of Dooley's injuries (or the photographs depicting them) are substantially similar to Steptoe's and Cooper's testimony describing how Horton shot at Steptoe. Thus, the admission of the officer's and the medical examiner's testimony or the photographs offered through those witnesses was not rendered harmless by the admission of Steptoe's and Cooper's testimony without objection.

■ Because Horton concedes the relevance of this testimony on the issue of Horton's motive, we assume without deciding that the evidence is in fact relevant to this issue.[3] However, a court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.CRIM. EVID. 403.

■ In balancing the probative value of evidence of extraneous conduct against the danger of unfair prejudice, a court may consider the following factors:

- the inherent probative value of the evidence;
- the similarity of the conduct to the offense on trial;
- the strength of the evidence of the extraneous conduct;
- the nature of the extraneous conduct and its potential for impressing the jury in irrational, but indelible ways;
- the time necessary to develop the evidence, giving consideration to whether the jury's attention will be diverted from the offense on trial; and
- the State's need for the evidence including: (a) the availability of other evidence which tends to accomplish the same

3. Based on Horton's concession, we assume without deciding that the evidence in question is relevant to the issue of motive. However, we expressly reject the State's suggestion that this evidence is "same transaction contextual evidence." The State cites four authorities in support of this argument: *United States v. Clements,* 73 F.3d 1330 (5th Cir.1996); *Santellan v. State,* 939 S.W.2d 155 (Tex.Crim.App.1997); *Camacho v. State,* 864 S.W.2d 524 (Tex.Crim.App.1993); *Yates v. State,* 941 S.W.2d 357 (Tex.App.—Waco 1997, pet. ref'd). These authorities do not support the State's reasoning because the extraneous conduct in each of these cases was "inextricably intertwined" with the facts of the charged of-

fense. *See Clements,* 73 F.3d at 1337; *Santellan,* 939 S.W.2d at 168; *Camacho,* 864 S.W.2d at 531–32; *Yates,* 941 S.W.2d at 367.

In Horton's case however, the Dooley murder occurred almost 2 years prior to Steptoe's murder. It involved a different victim. Moreover, the testimony regarding the extent of Dooley's injuries and the photographs depicting those injuries are in no way intertwined with the facts of the Steptoe murder. Thus, the evidence of the Dooley murder cannot be characterized as "same transaction contextual evidence." *See Rogers v. State,* 853 S.W.2d 29, 34 (Tex.Crim. App.1993).

"other purpose"; (b) the strength of the other evidence; and (c) whether the purpose served by the admission of the extraneous conduct relates to an issue that is in dispute.

*Montgomery,* 810 S.W.2d at 389–90; *Easter v. State,* 867 S.W.2d 929, 937 (Tex.App.—Waco 1993, pet. ref'd).

■ Although Horton concedes relevance, the "inherent probative value" of the officer's testimony, the medical examiner's testimony, and the photographs is slight at best. The evidence clearly establishes Dooley's murder by gunshot wounds. It inferentially tends to prove Horton's motive in that it corroborates Steptoe's grand jury testimony that Dooley was shot by Horton while in his car and the prosecutor's testimony that he was murdered. However, it in no way connects Horton to the Dooley murder.

The evidence that Horton murdered Dooley is strong and strikingly similar to the evidence regarding Horton's shooting of Steptoe. However, the evidence of the Dooley murder assuredly had a strong potential for impressing on the jury that Horton is a cold-blooded killer in general.

The presentation of the evidence in this case spans 332 pages in the reporter's record. The testimony of the officer and the medical examiner cover eighteen pages in the record. Thus, slightly more than five percent of the jury's time was occupied with this testimony. Accordingly, it cannot be said that the jury's attention was significantly diverted from the Steptoe murder because of the time involved in presenting the officer's and the medical examiner's testimony.

The State's need for this testimony was slight at best. Steptoe's grand jury testimony establishes Horton's motive by itself. The State did not need to go any farther because Horton did not controvert the fact that Steptoe had testified against him.

Based on the *Montgomery* factors cited above, we conclude that the court erred in admitting the officer's and the medical examiner's testimony concerning the Dooley murder and the photographs offered through these witnesses because the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. Accordingly, we must decide whether Horton was harmed by this error.

### HARM ANALYSIS

■ Because no constitutional error is involved, we must determine whether Horton's "substantial rights" were affected by the admission of the evidence in question. *See* TEX.R.APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). When we assess harm under Rule 44.2(b):

> we review the entire record to determine whether the error had more than a slight influence on the verdict. If we find that it did, we must conclude that the error affected the defendant's rights in such a way as to require a new trial. If we have grave doubts about its effect on the outcome, we should find that the error was such as to require a new trial. Otherwise, we should disregard the error.

*Fowler v. State,* 958 S.W.2d 853, 866 (Tex. App.—Waco 1997, pet. granted).[4]

Because Rule 44.2(b) mirrors Rule 52(a) of the Federal Rules of Criminal Procedure,[5] "cases and commentaries construing the federal rule[ ] are instructive to our interpretation of [Rule 44.2(b) ]." *Montgomery,* 810 S.W.2d at 387 n. 2; *Maibauer v. State,* 968 S.W.2d 502, 506 (Tex.App.—Waco 1998, pet. ref'd); *accord Umoja v. State,* 965 S.W.2d 3,

---

4. The Court of Criminal Appeals granted review in *Fowler* on two issues relating to this Court's determination to apply the harmless error test of Rule 44.2(b) rather than the test of the former Rule 81(b)(2) to the error found in that case. *See Fowler v. State,* No. 98–0075 (Tex.Crim.App. Mar. 11, 1998) (order granting petition for discretionary review).

5. The federal rule provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." FED. R.CRIM.P. 52(a).

11 (Tex.App.—Fort Worth 1998, no pet.) (op. on reh'g).

Although the federal courts have not developed a specific list of factors to be considered in this analysis, the cases reveal several factors which the federal courts have employed in assessing the harm flowing from extraneous conduct evidence admitted in violation of Rule 403.[6] Among these factors are:

- whether the other evidence of the accused's guilt is substantial or overwhelming; *See United States v. Vaughn*, 111 F.3d 610, 615 (8th Cir. 1997); *United States v. Campbell*, 64 F.3d 967, 978 n. 16 (5th Cir.1995); *see also United States v. Irvin*, 87 F.3d 860, 867 (7th Cir.1996) (evidence strong where defendant's statement indicated he had knowledge of the drugs he was charged with possessing and defendant admitted to police and jury that he possessed the drugs); *United States v. Brown*, 71 F.3d 1158, 1162–63 (5th Cir. 1995) (evidence not overwhelming and communications from jury indicated some doubt as to defendant's guilt);
- whether or to what extent the prosecution placed emphasis on the error; *See Vaughn*, 111 F.3d at 615; and
- whether other extraneous conduct evidence reflecting poorly on the accused's character was properly admitted or admitted without objection; *Id.;* and
- whether the court provided appropriate limiting instructions. *See United States v. Olivo*, 80 F.3d 1466, 1469 (10th Cir. 1996).

Texas courts likewise have not developed a specific list of factors to be considered in assessing harm under Rule 44.2(b). Nevertheless, Texas cases construing Rule 44.2(b) have employed factors similar to the ones cited above. Among them are:

- whether the other evidence of the accused's guilt is substantial or overwhelming; *See Holmes v. State*, 962 S.W.2d 663, 675 (Tex.App.—Waco 1998, pet. ref'd, untimely filed); *Garza v.*

*State*, 963 S.W.2d 926, 931–32 (Tex. App.—San Antonio 1998, no pet.); *Galvez v. State*, 962 S.W.2d 203, 207 (Tex. App.—Austin 1998, pet. ref'd); *Coggeshall v. State*, 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref'd);

- whether or to what extent the State placed emphasis on the error; *See King*, 953 S.W.2d at 272–73; *Holmes*, 962 S.W.2d at 675; *Garza*, 963 S.W.2d at 931; *George v. State*, 959 S.W.2d 378, 384 (Tex.App.—Beaumont 1998, pet. ref'd); *Howard v. State*, 962 S.W.2d 119, 124 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd); and
- in the context of extraneous conduct evidence, whether other extraneous conduct evidence reflecting poorly on the accused's character was properly admitted or admitted without objection; *See King*, 953 S.W.2d at 273; *Howard*, 962 S.W.2d at 124.

We will assess the harm in this case using the factors noted in these federal and state authorities.

■■■ The evidence in Horton's case may certainly be characterized as substantial when Shipman's testimony, Steptoe's prior testimony against Horton, and the corroborating circumstances described above (including Horton's bloody appearance and his admission to Shipman's girlfriend) are considered. Evidence that Horton was a member of the Four Trey Crip gang and that he shot at Steptoe four or five times was admitted without objection. The prosecution did not mention the officer's testimony or the medical examiner's testimony in closing argument other than a single reference to Peerwani's determination that the fatal bullet traveled from "[l]eft to right" which corroborated Steptoe's and Cooper's testimony that Horton shot Dooley from the passenger side of the car in which they were riding. The prosecutor did not display the photographs in question during closing argument, and the jury did not request to view them. Moreover, the court instructed the jury on several occasions that the evidence of the Dooley

---

**6.** The state and federal versions of Rule 403 are "materially identical." *Maibauer v. State*, 968

S.W.2d 502, 506 (Tex.App.—Waco 1998, pet. ref'd).

murder was admissible only on the issue of retaliation "if it is of any value to you at all." The court included a similar instruction in its charge.

On the other hand, the jury sent out notes indicating disputes about:

- "The stmt in which [Shipman] states he put the gun to his head."
- "[Shipman's] stmt in which he states how far he was away from the victim upon firing."
- "The stmt in which [Shipman] states they threw the shirt & boots away upon arrival the apt. [sic] (Did they throw them away in trash)"
- "[Shipman's girlfriend's] testimony on [Horton] & [Shipman] arrive [sic] to the apartment. What she said [Horton] was wearing & what she noticed about the blood on him."
- "[Shipman's] testimony upon arrival to the apartment regarding wiping off the gun."
- "[Shipman's] testimony regarding [Horton] going into the bathroom and cleaning the blood off himself."

The jury retired for deliberations at 5:00 p.m. on August 7. That evening the court had the court reporter read the requested portions of Shipman's statement to the jury. At some point thereafter, the jury recessed for the evening. The jury resumed deliberations at 9:00 the following morning. The court reporter read the requested items of testimony to the jury that morning. The court received the jury's verdict at 11:25 that morning.

Although the jurors apparently had questions about the extent of Shipman's involvement in the murder and the testimony regarding Horton's appearance and actions after the murder, they did not question the fact that Horton admitted killing Steptoe in the presence of Shipman's girlfriend. *Cf. Brown,* 71 F.3d at 1163 (jury's question suggested it harbored doubts as to whether the accused was the person whom the eyewitness saw on the date in question). Taking all these factors under consideration, we conclude that the court's error in admitting the autopsy photographs and the testimony of the officer and the medical

examiner did not have "a substantial and injurious effect or influence in determining the jury's verdict." *King,* 953 S.W.2d at 271. Thus, the error was harmless. For this reason, we overrule Horton's second point.

### CLOSE–UP PHOTOGRAPH

Horton argues in his fourth point that the court erred in admitting an enlarged close-up photograph of Steptoe's head which graphically depicts "a gruesome and bloody gaping wound which clearly exposed the deceased's brain" because the probative value of the photograph is substantially outweighed by the danger of unfair prejudice it poses. *See* TEX.R.CRIM. EVID. 403.

 Rule 403 governs the admissibility of photographic evidence alleged to be unduly prejudicial. *See Emery v. State,* 881 S.W.2d 702, 710 (Tex.Crim.App.1994). Several factors are weighed to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, including:

> the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed[, and] ... the availability of other means of proof and the circumstances unique to each individual case.

*Long v. State,* 823 S.W.2d 259, 272 (Tex. Crim.App.1991); *Sendejo v. State,* 953 S.W.2d 443, 446 (Tex.App.—Waco 1997, pet. ref'd). If a verbal description of an object or scene is admissible, then a photograph of that object or scene is generally also admissible. *Emery,* 881 S.W.2d at 710.

 The State offered four photographs of Steptoe's body through the crime scene officer. These photographs are labeled State's Exhibits 5–8. The exhibits depict the wounds on Steptoe's body as described by the crime scene officer and other witnesses. State's Exhibit 5 depicts a close-range gunshot wound to Steptoe's hand which the officer described as a defensive wound. State's Exhibit 6 depicts a piece of flesh which the officer observed about one foot from Steptoe's head and which the officer presumed to

be human flesh. State's Exhibits 7 and 8 depict the back of Steptoe's head as his body lay face-down.[7] State's Exhibit 7 depicts the back of Steptoe's head and his upper torso. State's Exhibit 8 is a close-up of the back of Steptoe's head. The crime scene officer used State's Exhibit 8 to explain that although he originally "thought the deceased had been hit with some kind of blunt object," "on closer examination, it was pretty obvious that it was a gunshot wound."

While State's Exhibit 8 is undoubtedly gruesome, it demonstrates the brutal nature of the offense committed and reflects the testimony of the State's witnesses. Thus, the court did not err in admitting the exhibit. *See Sendejo*, 953 S.W.2d at 447. Accordingly, we overrule Horton's fourth point.

We affirm the judgment.

CUMMINGS, J., not participating.

---

**7.** Prior to submission, Horton filed a motion with the Court asking that we direct the district clerk to forward the original versions of State's Exhib-its 7 and 8 to us for our review. *See* Tex.R.App. P. 34.6(g)(2). We granted this request and have reviewed these exhibits.