Terrence Markeith Kelly v. State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-213-CR

Â Â Â Â Â TERRENCE MARKEITH KELLEY,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 22,409-CR
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â 
Â Â Â Â Â Â Terrence Kelley was convicted of murder and sentenced to twenty yearsâ imprisonment. 
Tex. Pen. Code Ann. Â§ 19.02 (Vernon 1994). He appeals, asserting only that the court erred
in admitting certain photographs into evidence during the guilt-innocence phase of trial. 
Finding no harm, we will affirm the judgment. 
Â 
Â 
FACTS
Â Â Â Â Â Â Shortly after midnight on June 24, 1996, Ulices Ramirez was shot and killed in front of an
Exxon station at the intersection of Interstate 45 and Highway 34 in Ennis, Texas. Kelley gave
a voluntary statement in which he admitted committing the offense. According to his
statement, Kelley and his girlfriend, Camilla Carter, went to the Exxon station late on June 23
to âbuy some snacks.â When Kelley got out of the car, Ramirez âsaid somethingâ to him, but
Kelley could not understand him. Carter had already exited the car and reached the door of the
store. Ramirez then started walking toward Kelley. Kelley was scared, so he took a pistol out
of the glove compartment in the car. Ramirez then grabbed Kelleyâs wrist and they âtussled
for a minute.â Kelley shot the gun twice, hitting Ramirez once in the chest. Kelley then ran
into the store, said âcall the police,â and left with Carter. They went to Carterâs house and hid
the gun. Kelley then left Carterâs house and headed to his own home.
Â Â Â Â Â Â While on his way home from Carterâs, Kelley was stopped by the police and arrested for
the murder. Kelley did not deny the offense. He took the police to the place where he hid the
gun and offered to give a voluntary statement about the event. At trial, Kelley argued that his
actions were in self-defense. 
PHOTOGRAPHS
Â Â Â Â Â Â In the only issue presented for review, Kelley urges that the court erred in admitting
photographs labeled as âStateâs Exhibit 4.â Although the photographs have not been included
in the record on appeal, they are adequately described in the reporterâs record. They are
photographs taken at the hospital after medical personnel attempted to save Ramirezâs life. 
The pictures depict electrodes hooked to Ramirez to monitor his heart activity, an intubation
tube in his mouth to facilitate breathing, a gunshot wound to the chest, and the floor
surrounding the area which is covered in blood. The pictures were authenticated through Jeff
Gray, a fireman and paramedic with the Ennis Fire Department. 
Â Â Â Â Â Â Gray testified about Ramirezâs condition when he arrived on the scene and the efforts
undertaken to save his life. Gray testified that the photographs fairly and accurately depicted
the victim âin the emergency room immediately after [they] stopped working on him,â and
âsome of the medical procedures [taken] to help save his life.â After taking Gray on voir dire,
Kelley objected that: (1) the proper foundation had not been laid to show that the photographs
have not been altered, and (2) although somewhat probative, the photographs are
âunnecessary, inflammatory and the amount of their inflammatory nature greatly outweighs
any probative value that they may have on the jury.â That objection was overruled.
Â Â Â Â Â Â On appeal, Kelley asserts that the State failed to prove that the scene had not been altered
or that the scenes depicted were accurate. He also asserts that the photographs were
unnecessary and inflammatory. Kelley has cited only one case to support any of his assertions
on appeal. See Barnes v. State, 876 S.W.2d 316, 325-26 (Tex. Crim. App. 1994). 
Â Â Â Â Â Â We review a court's ruling on the admissibility of evidence under an abuse of discretion
standard. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). We will not
reverse such a ruling so long as it falls within the âzone of reasonable disagreement." Id. at
102 (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on
reh'g)). Generally, photographs are admissible when verbal testimony as to the matters they
depict is admissible. Ramirez v. State, 815 S.W.2d 636, 647 (Tex. Crim. App. 1991). The
admissibility of photographs is within the discretion of the court, which determines whether
they serve the proper purpose in enlightenment of the jury. Villegas v. State, 791 S.W.2d 226,
237 (Tex. App.âCorpus Christi 1990, pet. ref'd). Error does not occur unless the court
abuses that discretion. Werner v. State, 711 S.W.2d 639, 643 (Tex. Crim. App. 1986). 
Â Â Â Â Â Â Photographs are authenticated by the testimony of any witness who has personal
knowledge that the particular item accurately represents the scene or event which the
photographs purport to portray. Tex. R. Evid. 901. There is no requirement that the witness
took the photo, saw it taken, or was present when it was taken. Hughes v. State, 878 S.W.2d
142, 155 (Tex. Crim. App. 1992) (citing DeLuna v. State, 711 S.W.2d 44, 46 (Tex. Crim.
App. 1986)). Any witness who observed the object or the scene depicted in the photograph
may lay the predicate. Huffman v. State, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988). 
Therefore, the predicate for the admission of the photographs was proper.
Â Â Â Â Â Â Rule of Evidence 403 governs the admissibility of photographic evidence alleged to be
unduly prejudicial. Horton v. State, 986 S.W.2d 297, 305 (Tex. App.âWaco 1999, no pet.)
(citing Emery v. State, 881 S.W.2d 702, 710 (Tex. Crim. App. 1994)). Rule 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the
jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Tex. R. Evid. 403. 
Â Â Â Â Â Â As stated before, Kelley cites only to Barnes and only for the purpose of saying the
evidence should be excluded because its probative value was substantially outweighed by the
danger of unfair prejudice and misleading the jury. Barnes, 876 S.W.2d at 325-26. In
Barnes, the Court of Criminal Appeals held that a claim that the photographs were submitted
by the State purely to "inflame the passion of the jury" was unfounded. Id. Rather, the Court
stated, the Rules limit a review of this type of evidence to a determination of whether the
probative value of the photos is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence. Id. (referencing the former Rules of Criminal
Evidence). The Court went on to affirm the trial courtâs decision to admit the photographs in
question, stating that, âalthough the photographs are gruesome and detailed, they are not
enhanced in any way and portray no more than the injuries inflicted.â Id. at 326. The Court
ultimately held that the trial court did not abuse its discretion in finding the danger of unfair
prejudice did not substantially outweigh the probative value of the photographs. Id. We will
review these photographs to ascertain whether the court abused its discretion using the same
test: does the danger of unfair prejudice substantially outweigh the probative value of the
evidence? 
Â Â Â Â Â Â Several factors are weighed in making this determination, including:
the number of exhibits offered, their gruesomeness, their detail, their size, whether they
are black and white or color, whether they are close-up, whether the body is naked or
clothed[, and] ... the availability of other means of proof and the circumstances unique to
each individual case. 

Horton, 986 S.W.2d at 305 (citing Long v. State, 823 S.W.2d 259, 272 (Tex. Crim. App.
1991)); Sendejo v. State, 953 S.W.2d 443, 446 (Tex. App.âWaco 1997, pet. ref'd).
Â Â Â Â Â Â Â The photographs are described as four 8 x 10 inch color photographs. We cannot say
how gruesome they may appear. Regardless, in light of the fact that Kelley did not deny
shooting Ramirez, we see very little probative value in photographs which depict the victimâs
condition after life-saving measures had been attempted. The amount of blood surrounding the
body at the hospital and the manner in which miscellaneous medical equipment was used to
save Ramirez have no tendency to prove or disprove whether Ramirez was shot (which was
undisputed) or, more importantly, whether he was shot in self-defense. The only photograph
which would have some probative value is the one showing the gunshot wound. This
relevancy is minimal, however, in light of the fact that the shooting was undisputed. On the
other hand, one can foresee the impact that these photographs would have on a jury and that
the jury might be distracted by the sight of Ramirez covered and surrounded by blood and
medical equipment. Therefore, we find that the danger of unfair prejudice substantially
outweighed the probative value and hold that the court abused its discretion in admitting these
photographs into evidence. 
Â Â Â Â Â Â Because the photographs should not have been admitted into evidence, we now must
consider whether Kelley was harmed by their erroneous admission. This is non-constitutional
error governed by Rule of Appellate Procedure 44.2(b). See Tex. R. App. P. 44.2(b); Fowler
v. State, 958 S.W.2d 853, 865-66 (Tex. App.âWaco 1997), affâd, 991 S.W.2d 258 (Tex.
Crim. App. 1999). In considering harm, we review the entire record to determine whether the
error had more than a slight influence on the verdict. Fowler, 958 S.W.2d at 866. If we find
that it did, we must conclude that the error affected the defendantâs substantial rights in such a
way as to require a new trial. Id. Otherwise, we disregard the error. Id. 
Â Â Â Â Â Â The evidence of Kelleyâs involvement in the shooting is undisputed, so there is no question
that he killed Ramirez. Kelley suggests that it was done in self-defense, but says in his
statement that he felt threatened because Ramirez walked toward him and said âsomethingâ
that Kelley could not understand. The jury was free to disbelieve that Kelley acted out of fear. 
Even if the jury did believe that Kelley was fearful, it could have properly declined to find that
Kelleyâs actions were in self-defense. We do not believe that the erroneously-admitted
photographs would have had more than a slight influence on this decision. 
Â Â Â Â Â Â Furthermore, the jury did find that Kelley was acting under the immediate influence of
sudden passion and, therefore, sentenced him to only twenty yearsâ imprisonment, when
punishment could have been assessed at 99 years and a $10,000 fine. Considering the entire
record, we cannot say that the error had more than a slight influence on the verdict. Fowler,
958 S.W.2d at 866. Thus, issue one is without merit.
Â Â Â Â Â Â The judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Â Â Â Â Justice Gray
Â Â Â Â Â Â Â Â Â Â (Concurring opinion by Justice Gray)
Affirmed 
Opinion delivered and filed June 21, 2000
Publish



 case is different than Luken
and Brooks because Steadman argues
that the enhancement allegation is defective (i.e., inadequate).  Because
of this distinction, we hold that Steadman failed to preserve his complaint
regarding the adequacy of the enhancement allegation because he failed to raise
it by pretrial objection.Â  See Tex.
Code Crim. Proc. Ann. art. 1.14(b); Shaw
v. State, 794 S.W.2d 544, 544 (Tex. App.ÂDallas 1990, no pet.); Chambless v. State, 776 S.W.2d 718, 719
(Tex. App.ÂCorpus Christi 1989, no pet.); accord
Sanchez, 120 S.W.3d at 364.

Â Â Â Â Â Â Â Â Â  Nevertheless,
Steadman also contends that the court erred by charging the jury that it must
sentence him to life imprisonment on both counts under section 12.42(c)(2)
rather than charging the jury under the general enhancement provision of
section 12.42(b).Â  Even though Steadman did
not raise this objection at trial, he may raise this issue for the first time
on appeal, but he can obtain a reversal only if the alleged error resulted in
egregious harm.Â  Bluitt v. State, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004) (citing Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985)); see also Kucha
v. State, 686 S.W.2d 154, 155 (Tex. Crim. App. 1985) (applyng Almanza standard to punishment charge).Â  To prevail in this instance, Steadman must
establish that the charge is erroneous and that this error caused him egregious
harm. Â See Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); Phillips v. State, 72 S.W.3d 719, 721 (Tex. App.ÂWaco 2002, no pet.).

Â Â Â Â Â Â Â Â Â  The
indictment alleges that Steadman committed two sexual assaults and that he has
a prior conviction for sexual assault.[3]Â  The court instructed the jury in the charge
that, because the jury had convicted Steadman of two counts of sexual assault
and because he pleaded ÂtrueÂ to the enhancement allegation, a mandatory life
sentence was required by law for each count.

Â Â Â Â Â Â Â Â Â  The
courtÂs charge comports with the enhancement allegation in the indictment, with
the defendantÂs plea to the enhancement allegation, and with section
12.42(c)(2).Â  Thus, no error is shown.Â  Cf.
Throneberry v. State, 109 S.W.3d 52, 60 (Tex. App.ÂFort Worth 2003, no pet.) (punishment
charge erroneous because it included enhancement instruction despite StateÂs
failure to give notice); Brooks, 921
S.W.2d at 879 (same).

Â Â Â Â Â Â Â Â Â  Accordingly,
we overrule SteadmanÂs first issue.

Steadman
Failed To Preserve His Constitutional Claims

Â  Â Â Â Â Â Â Â  Steadman contends in his second issue
that his life sentences constitute cruel and unusual punishment in violation of
the Eighth Amendment.Â  He contends in his
third issue that his sentences violate the Fourteenth AmendmentÂs equal
protection guarantee.Â  However, because
he did not raise these contentions at trial, he has failed to preserve them for
appellate review.Â  See Schneider v. State, 645 S.W.2d 463, 466 (Tex. Crim. App. 1983)
(cruel-and unusual-punishment claim not preserved); Castaneda v. State, 135 S.W.3d 719, 723 (Tex. App.ÂDallas 2003, no
pet.) (same); Steadman v. State, 31
S.W.3d 738, 742 (Tex. App.ÂHouston [1st Dist.] 2000, pet. refÂd) (equal-protection and
cruel-and-unusual-punishment claims not preserved); accord Neal v. State, No. PD-1559-03, 2004 Tex. Crim. App. LEXIS
1976, at *13-15 (Tex. Crim. App. Nov. 17, 2004) (due process claim not preserved). Â Â Accordingly, we overrule SteadmanÂs second
and third issues.

Steadman Did Not Suffer Egregious
Harm Because Of The

CourtÂs Failure To Submit Separate
Verdict Forms

Â 

Â Â Â Â Â Â Â Â Â  Steadman
contends in his fourth issue that the court erred by failing to submit a
separate verdict form for each count under which he was convicted.Â  Because Steadman did not object to the
punishment charge, he can obtain reversal only if the alleged error caused him
egregious harm.Â  See Mann, 964 S.W.2d at 641; Phillips,
72 S.W.3d at 721.

Â Â Â Â Â Â Â Â Â  Article
37.07, section 1(b) provides that ÂIf the plea is not guilty, [the jurors] must
find that the defendant is either guilty or not guilty, and, except as provided
in Section 2, they shall assess the punishment in all cases where the same is
not absolutely fixed by law to some particular penalty.ÂÂ  Tex.
Code Crim. Proc. Ann. art. 37.07, Â§ 1(b) (Vernon Supp. 2004Â2005).Â  Section 2 establishes the procedures by which
a defendant may elect to have the jury assess his punishment or waive that
right.Â  Id. Â§ 2 (Vernon Supp. 2004Â2005).Â  Section 2(c) provides that, when a jury is
assessing punishment, Â[p]unishment shall be assessed on each count on which a
finding of guilty has been returned.ÂÂ  Id. Â§ 2(c).

Â Â Â Â Â Â Â Â Â  Here,
Steadman pleaded ÂtrueÂ to the enhancement allegation.Â  Therefore, he faced a mandatory life sentence
on both counts.Â  See Tex. Pen. Code Ann.
Â§ 12.42(c)(2)(A)(i), (B)(ii).Â  Accordingly,
the trial court should have excused the jury after receiving SteadmanÂs plea of
ÂtrueÂ and assessed SteadmanÂs punishment without the jury.Â  Tex.
Code Crim. Proc. Ann. art. 37.07, Â§ 1(b); Zaragosa v. State, 516 S.W.2d 685, 686 (Tex. Crim. App. 1974); Corswell v. State, 679 S.W.2d 155, 156
(Tex. App.ÂDallas 1984, no pet.); Lynch
v. State, 635 S.W.2d 172, 174-75 (Tex. App.ÂHouston [1st Dist.] 1982), revÂd on other grounds, 643 S.W.2d 737
(Tex. Crim. App. 1983).

Â Â Â Â Â Â Â Â Â  Even
if we were to conclude (which we do not) that the court erred by failing to
submit separate verdict forms to the jury, no Âegregious harmÂ is shown.Â  The jury had only one option for sentencing:
a life sentence on both counts.Â  Steadman
and his counsel knew this before the trial began, as evidenced by counselÂs
comments made in SteadmanÂs presence during a pretrial hearing in which the
parties discussed whether the punishment issue should be addressed during voir
dire.

Â Â Â Â Â Â Â Â Â  Accordingly,
we overrule SteadmanÂs fourth issue.




Steadman Is Estopped To Complain
That The Jury Rather Than

The Court Found The Enhancement
Allegation True

Â 

Â Â Â Â Â Â Â Â Â  Steadman
contends in his fifth issue that, assuming the issue of punishment was not
properly before the jury, his punishment verdict is void because the court did
not affirmatively find that he had been previously convicted as alleged.

Â Â Â Â Â Â Â Â Â  Steadman
suggests that the issue of punishment was not properly before the jury because
the record contains no indication that he desired jury sentencing.Â  However, the record plainly reflects that
SteadmanÂs counsel insisted at the punishment charge conference that the matter
be submitted to the jury.Â  See Rushton v. State, 695 S.W.2d 591,
594-95 (Tex. App.ÂCorpus Christi 1985, no pet.) (defendant may verbally request
jury sentencing at trial).

Â Â Â Â Â Â Â Â Â  Therefore,
because Steadman insisted that the jury assess punishment, he is estopped to
complain that the jury rather than the court found the enhancement allegation
Âtrue.ÂÂ  See Ripkowski v. State, 61 S.W.3d 378, 388-89 (Tex. Crim. App.
2001); Wisdom v. State, 143 S.W.3d
276, 280 (Tex. App.ÂWaco 2004, no pet.); see
also Fontenot v. State, 500 S.W.2d 843, 844 (Tex. Crim. App. 1973) (no
reversible error shown where defendant did not object to jury assessing
punishment).Â  Accordingly, we overrule
his fifth point.

We affirm the judgment.

Â 

FELIPE REYNA

Justice

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion delivered and filed January
 26, 2005

Publish

[CRPM]











Â Â Â  [1]Â Â Â Â Â Â Â Â Â Â  After
indicating the style of the case, the caption of the indictment reads as
follows:

Â 

PRIMARY
OFFENSE: Sexual Assault (Enhanced)ÂCount
I; Sexual Assault (Enhanced)ÂCount II

Â Â§ 22.011,
Texas Penal Code

2nd
Degree Felonies Enhanced





Â Â Â  [2]Â Â Â Â Â Â  Article V, Â§ 12(b) of the Texas
Constitution provides in pertinent part, ÂAn indictment is a written instrument
presented to a court by a grand jury charging a person with the commission of
an offense.Â





Â Â Â  [3]Â Â Â Â Â Â Â Â Â Â  The
statement in the caption of the indictment that Steadman was charged with Â2nd
Degree Felonies EnhancedÂ has no bearing on this issue because the caption is
not considered to be a part of the indictment.Â 
See Stansbury v. State, 128 Tex. Crim. 570, 82 S.W.2d 962, 964 (1935); Miller v. State, 687 S.W.2d 33, 41 (Tex.
App.ÂCorpus Christi 1985), affÂd, 736
S.W.2d 643 (Tex. Crim. App. 1987); see
also Jackson v.
State, 880 S.W.2d 432, 433
(Tex. App.ÂHouston [14th Dist.] 1994, pet. refÂd) (applying same rule to
information).