Gene WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–98–359–CR

Court of Appeals of Texas,
Waco.

Aug. 30, 2000.

Michael P. Mondville, Huntsville, for appellant.

Kelly Thompson Weeks, Special Prosecution Unit, Huntsville, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

A jury convicted Gene Williams of assault of a public servant, and the trial court sentenced him to nine years' confinement. Williams appeals on two issues both based on the admission of evidence pertaining to misconduct by another inmate who was not on trial. Because evidence of the other inmate's misconduct is not relevant and its probative value is substantially outweighed by its prejudicial effect, we conclude the court erred by overruling Williams' objections. Finding that he was harmed by the error, we will reverse the judgment.

### FACTS

Williams is an inmate at the Ferguson Unit of the Texas Department of Criminal Justice–Institutional Division. Williams and Desmond Martin were indicted together for assault of Andy Casey, a correctional officer. The testimony at trial indicated that Casey was escorting Martin to his cell after he had been found masturbating in the day room. Once they arrived at Martin's cell, Casey requested that his door be opened. However, during this process, a malfunction occurred which caused Williams' cell to open as well. Once this occurred, Williams allegedly left his cell and in conjunction with Martin assaulted Casey.

Martin's case was severed, so he was not involved in Williams' trial, as either a defendant or witness. During a pretrial hearing the court determined the admissibility of evidence of Martin's misconduct. The State relied on the fact that Williams and Martin were indicted together. Although Williams timely objected, the court allowed the evidence to be introduced during trial.

References to Martin's misconduct were first made by the State, during its opening statement:

[Casey] sees inmate Desmond Martin bending over and he looks at him and he sees ... that there's a female guard standing there and he notices that he's masturbating. And that's a violation of the rules.

Evidence of Martin's misconduct was later elicited by the State during the direct examination of Officer Casey in the State's case-in-chief:

Q. And was there anything that called your attention to Mr. Martin?

A. Yes, sir, I turned around and I saw him at the window of the dayroom looking down the hallway—looking at a female officer. And I kind of walked around a little bit to see exactly what he was doing, and he was involved in sexual misconduct.

Q. And what is that?

A. Masturbating.

The State also alluded to Martin's misconduct during its opening argument:

The reason [Casey] was taking [Martin] up to his cell was because of the sexual misconduct on the part of Mr. Martin in the dayroom.

Finally, during the State's rebuttal the prosecutor made the following statements seeking to have the jury punish Williams for the act of sexual misconduct committed by Martin:

We need to send a message to this prisoner that we in this county ... are not going to tolerate inmates taking advantage of our officers ... sexual misconduct, or whatever, in front of these ladies that are working there. We're

not going to tolerate that. And you can send a message by finding this man guilty because he is guilty.

## DISCUSSION

█ During a pretrial hearing, Williams objected to evidence of Martin's misconduct as irrelevant and prejudicial. Tex.R. Evid. 402, 403. When a court, out of the jury's presence, hears and overrules objections to evidence, those objections need not again be made before the jury when the evidence actually is presented to the jury. Tex.R. Evid. 103(a)(1); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991). Consequently, Williams' objections were sufficient to preserve his complaint about the admissibility of evidence of Martin's misconduct.

### *Evidence of Martin's misconduct was not relevant*

█ Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401. This does not mean that the fact must be in dispute; rather, the fact must only have something to do with the ultimate determination of guilt or innocence in the case. *Mayes v. State*, 816 S.W.2d 79, 84 (Tex.Crim.App.1991); *see Long v. State*, 10 S.W.3d 389, 396 (Tex. App.—Texarkana 2000, pet. ref'd). Irrelevant evidence is inadmissible. Tex. R. Evid. 402. We review the trial court's admission of evidence over a timely lack-of-relevancy objection under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990); *Long*, 10 S.W.3d at 396.

█ The State argued that the evidence of Martin's misconduct provided a background as to why the assault occurred. The State claims that Martin's misbehavior led to a continuing incident which eventually permitted him and Williams to assault Casey. The State is entitled to put on evidence of what occurred immediately before and after the commission of an offense, if that evidence is relevant to something at issue in the case, and is not inherently prejudicial. *Christopher v. State*, 833 S.W.2d 526, 529 (Tex.Crim.App.1992).

Here, the issue is whether Williams intentionally and knowingly caused bodily injury to Casey. Tex. Pen.Code Ann. § 22.01(a)(1) (Vernon Supp.2000). Evidence of Martin's misconduct, however, could not have had a tendency to make the existence of a fact of consequence more or less probable than it would have been otherwise. *Montgomery*, 810 S.W.2d at 391. Consequently, the evidence was not relevant and had no bearing on the ultimate determination of Williams' guilt or innocence. *Mayes*, 816 S.W.2d at 84. Therefore, we conclude that the trial court abused its discretion in the admission of evidence pertaining to the misconduct by another inmate who was not before the court. *Christopher*, 833 S.W.2d at 529–30; *Montgomery*, 810 S.W.2d at 391.

### *Even if the evidence were relevant, its probative value was outweighed by its prejudicial effect*

█ Williams also objected pretrial that the evidence was "prejudicial." A court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R. Evid. 403. In balancing the probative value of evidence of extraneous conduct against the danger of unfair prejudice, a court may consider the following factors:

- the inherent probative value of the evidence;
- the similarity of the conduct to the offense on trial;
- the strength of the evidence of the extraneous conduct;
- the nature of the extraneous conduct and its potential for impressing the jury in irrational, but indelible ways;
- the time necessary to develop the evidence, giving consideration to whether the jury's attention will be

diverted from the offense on trial; and

- the State's need for the evidence including: (a) the availability of other evidence which tends to accomplish the same "other purpose"; (b) the strength of the other evidence; and (c) whether the purpose served by the admission of the extraneous conduct relates to an issue that is in dispute.

*Montgomery*, 810 S.W.2d at 389–90; *Horton v. State*, 986 S.W.2d 297, 302 (Tex. App.—Waco 1999, no pet.).

Evidence of Martin's masturbation has no "inherent probative value" and is in no way similar to the evidence regarding Williams' assault of Casey. The strength and nature of the evidence probably left an impression upon the jury that Williams was somehow involved with Martin's sexual misbehavior. Evidence of the misconduct was presented during the State's examination of Casey. The State referred to the misconduct during its opening statement, final argument, and in its rebuttal. Accordingly, we believe that the jury's attention was diverted from the evidence. Finally, the State lacked a need for this testimony, since the evidence in no way established that Williams assaulted Casey.

Consequently, based on the *Montgomery* factors cited above, we conclude that even if the evidence were admissible its probative value was substantially outweighed by its prejudicial effect. Accordingly, we must decide whether Williams was harmed by this error. *Montgomery*, 810 S.W.2d at 391.

### Harm from the erroneous admission of evidence of Martin's misconduct

 The trial court's error in admitting this evidence is a non-constitutional error; therefore, we must determine whether Williams' "substantial rights" were affected by the erroneous ruling. Tex.R.App. P. 44.2(b); *Horton*, 986 S.W.2d at 303. "A substantial right is affected when the error had a substantial and inju-

rious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Horton*, 986 S.W.2d at 303. In analyzing harm under Rule 44.2(b):

we review the entire record to determine whether the error had more than a slight influence on the verdict. If we find that it did, we must conclude that the error affected the defendant's rights in such as way as to require a new trial. If we have grave doubts about its effect on the outcome, we should find that the error was such as to require a new trial. Otherwise, we should disregard the error.

*Horton*, 986 S.W.2d at 303; *Fowler v. State*, 958 S.W.2d 853, 866 (Tex.App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim.App.1999).

 In *Horton*, we developed factors to analyze harm flowing from the erroneous denial of a Rule 403 objection. *Horton*, 986 S.W.2d at 303–04. Among these factors are: the strength of the other evidence; the emphasis that the State placed on the erroneously admitted evidence; whether other extraneous-conduct evidence was properly admitted; and whether the court provided appropriate limiting instructions. *Id.*

The evidence of Williams' guilt is strong but cannot be considered "overwhelming." Casey was the only eyewitness who identified Williams as the perpetrator, and Casey's testimony raised questions about his involvement. A significant portion of the trial was devoted to establishing the events that lead up to the assault. Additionally, as we have noted, the prosecutor referred to Martin's misconduct during his opening statement, his examination of Casey, his final argument, and in his rebuttal. In rebuttal, the State suggested:

We need to send a message to this prisoner that we in this county ... are not going to tolerate inmates taking advantage of our officers ... sexual misconduct, or whatever, in front of these ladies that are working there. We're

not going to tolerate that. And you can send a message by finding this man guilty because he is guilty.

No other extraneous-act evidence was admitted, and no limiting instruction was given regarding the evidence of Martin's misconduct.

The State emphasized the erroneously admitted evidence and even asked for it to be considered when assessing Williams' punishment. Thus, we are left with grave doubts about this evidence's effect on the outcome of his trial. We conclude, then, that the erroneous admission of the evidence regarding Martin's misconduct affected Williams' substantial rights and mandates that the judgment be reversed.

We reverse the judgment and remand the cause for a new trial.

Justice GRAY dissenting.

TOM GRAY Justice, dissenting.

Gene Williams was indicted and tried for assault on a correctional officer. The indictment alleged that Williams "acting together [with Desmond Martin], did then and there intentionally and knowingly cause bodily injury to Andy Casey, by striking him in the head with their fists, and the defendants knew that the said Andy Casey was then and there a public servant, to-wit: a correctional officer...." Williams and Martin are both in prison. Casey is a prison guard.

The testimony was that as the result of Martin allegedly masturbating in the day room, he was being escorted back to his cell by Casey. Martin denied the incident and used profanity and made various accusations against Casey in route back to his cell. As Martin was entering his cell and Casey was continuing down the cat-walk outside the cell and behind Martin, Casey testified that Martin turned, raised his hand and told Casey to "Start leaving him the fuck alone and get off his back all the time." Casey ordered Martin to lower his hand. Martin refused. Martin then attempted to hit Casey with the raised hand, which was blocked by Casey, but Martin struck Casey in the face with his other hand.

Unknown to Casey, when Martin's cell door was opened the adjacent cell also opened. This was the cell door to Williams's cell. Williams left his cell and struck Casey from behind on the head. The force of the blow was so hard that Casey's legs gave way and he fell to his knees. Both assailants then proceeded to strike him on the head with their fists. Eventually Casey was down on all fours being attacked by the two prisoners. During the struggle, Casey looked up and was able to determine the identity of the assailant who attacked him from behind, Williams. As other guards could be heard running to the scene of the "fight" and the doors to the cells were closing, Casey was able to shove Martin back into his cell and observe Williams retreating to his.

If the State was attempting to inflame the jury with the alleged masturbation of Martin, they did a very poor job of it. They only raised it as the basis for explaining why Casey was having to escort Martin to his cell from the day room. It also provided the context for the profanity and accusations being made by Martin against Casey while in route to the cell and immediately prior to the incident. As the majority notes, the State only referred to the incident once in their opening and once in their closing arguments and did not use the term "masturbation." It was referred to by the much more general phrase, "sexual misconduct."

As the State argued to the trial court in the pre-trial hearing to suppress introduction of the alleged sexual misconduct, it was the incident which in an unbroken chain of events ended with the assault on Casey. There was no question that it was not Williams that was engaged in the conduct and thus no chance of the jury being confused about who was being tried for what offense. To show the full context of the events the State is allowed *some* lati-

tude regarding what evidence is admissible. *See generally, Christopher v. State,* 833 S.W.2d 526 (Tex.Crim.App.1992); *Couret v. State,* 792 S.W.2d 106 (Tex.Crim. App.1990); *Maddox v. State,* 682 S.W.2d 563 (Tex.Crim.App.1985). I would hold that the evidence was properly admitted over both the relevancy objection and the objection that the probative value was outweighed by the prejudicial effect.

Further, Williams introduced evidence that it was Texas Department of Criminal Justice policy to have two guards, one equipped with a video camera, to escort a prisoner back to his cell after an alleged disciplinary violation. Williams also established that masturbation in the day room was a disciplinary violation. Williams established the policy requiring a video escort was violated in this instance, in an effort to create doubt that the sexual misconduct incident occurred. This testimony had the effect of further distancing the sexual misconduct of Martin from the assault of Casey by Williams.

Finally, having reviewed the entire record of the proceedings from voir dire to verdict, I cannot agree that, if it was error, that it in any way contributed to the guilty verdict or the sentence. I would hold that the error, if any, was harmless.

For the reasons stated, I respectfully dissent from the majority's opinion and judgment.