Tyrone Fowler v. State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-358-CR

     TYRONE FOWLER,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 278th District Court
Madison County, Texas
Trial Court # 9879
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      A jury convicted Tyrone Fowler of assault of a public servant. The court sentenced him to
six years in prison. In two points of error, Fowler complains of the exclusion of impeachment
evidence and the limitation of defense counsel’s voir dire. We affirm.
FACTS
      Testimony provided a variety of versions of the incident that resulted in prison guard Rosendo
Botello’s injuries. Witnesses agree that:
1) While Fowler was out of his cell for “chow,” Botello conducted a shakedown (search
for contraband) of Fowler’s cell and removed some “girly” pictures that were against
regulations from the walls.
 
2) Fowler found out about the shakedown while in a holding area, but did not return to
his cell before the incident with Botello.
 
3) Fowler spoke to a ranking officer about the shakedown.
 
4) Fowler and Botello engaged in a struggle.
 
5) Botello’s nose was injured and bleeding.
 
6) Fowler was taken down and restrained.
      However, there is disagreement about the “fight” itself and Fowler’s injuries. According to
the State’s witnesses–all prison employees–Fowler was the aggressor. Both Botello and the
ranking officer who observed the “attack” testified that Fowler hit Botello with his fist, that
Botello merely attempted to defend himself and to restrain Fowler, and that Botello did nothing
to provoke Fowler–other than order Fowler back to his cell. Botello recalled being struck only
once, even though Fowler swung at him more than once. Other officers, including the ranking
officer, remembered that Fowler landed several blows to Botello. The State’s witnesses all agreed
that Fowler was taken down to the floor, but disagreed about who was actually involved in
restraining Fowler. The nurse who treated Fowler immediately after the incident testified that
Fowler had no visible injuries except a hematoma near one eye. Although Fowler had blood on
him, it was determined that the blood was Botello’s. A photograph taken by the ranking officer
also revealed a redness on Fowler’s shoulder. The ranking officer confirmed that Fowler had no
visible broken skin or bruises immediately following the incident.
      Defense witnesses–all inmates at the time–painted different pictures. One inmate testified that
Botello swung at Fowler first after Botello began talking “bad.” When the two began to “tussle,”
eight or nine guards restrained Fowler and began kicking Fowler and hitting him with sticks. 
Fowler’s cellmate testified that Fowler and Botello got into a verbal dispute and that four officers
ran in from the hallway and wrestled Fowler to the ground. The cellmate claimed that Botello
then kicked Fowler three or four times in the face. He also testified that he saw Fowler the next
day and that Fowler had bruises and cuts. Two other inmates who observed the incident from a
distance both testified that at least five guards “flat weeded” Fowler. One inmate recalled that the
guards kicked and punched Fowler while he was on the ground. The other inmate claimed that
Botello pushed and shoved Fowler, but admitted that he was not sure if Fowler had hit Botello.
IMPEACHMENT EVIDENCE
      In his first issue, Fowler contends that the trial court erred when it excluded impeachment
evidence to show bias or motive for testifying falsely. Botello’s employment records indicated that
he had received a nine-month probation for the use of excessive force against an inmate and for
failure to report completely or accurately the excessive use of force. Testimony from State’s
witnesses, including Botello himself, confirmed that a second disciplinary action against an
employee could result in dismissal. Fowler claims that the evidence was admissible under Texas
Rules of Evidence 613(b) and 404(b) to show that Botello had a motive for fabricating his
testimony, specifically to avoid dismissal for a second violation involving excessive force against
an inmate. The trial court repeatedly ruled that the evidence was not admissible. 
      The State points out that the first incident did not involve Fowler and that Botello’s
probationary period had expired over a year before the incident with Fowler. Additionally, the
State claims that the employment probation, an unadjudicated offense, is expressly forbidden by
Texas Rules of Evidence 608(b) and 613(b).
Applicable Law
       Rule 608(b) precludes the use of specific instances of conduct, other than convictions for
crime as set forth in Rule 609, to attack a witness’s credibility. See Tex. R. Evid. 608(b).
Because employment probation, like deferred adjudication, is not a conviction, evidence of it is
not admissible under Rule 608(b). Rule 613(b), however, allows a witness to be impeached with
specific instances of conduct to show bias or motive. See Tex. R. Evid. 613(b). For such
evidence to be admissible, the proponent must:
1. Establish some causal connection between the charges and the witness’s potential bias. 
Callins v. State, 780 S.W.2d 176, 196 (Tex. Crim. App. 1986).
 
2. Lay the proper predicate by informing the witness about the circumstances tending
to show bias and by giving him an opportunity to explain or deny before an attempt is
made to prove bias. Willingham v. State, 897 S.W.2d 351, 358 (Tex. Crim. App. 1995).
 
3. Show the relevance of the evidence. Chambers v. State, 866 S.W.2d 9, 26-27 (Tex.
Crim. App. 1993). Evidence is relevant if it tends to make the existence of any fact that
is of consequence to the determination of the action more probable or less probable than
it would be without the evidence. The fact must only have something to do with the
ultimate determination of guilt or innocence in the case. Williams v. State, 27 S.W.3d
599, 602 (Tex. App.—Waco 2000, no pet. h.).

      We review the court’s decision to admit or exclude evidence under an abuse-of-discretion
standard. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The trial judge
must balance probative value against prejudicial risk. Chambers, 866 S.W.2d at 26-27. We have
recognized in the past that the trial court may limit the right of a defendant to impeach a witness
with extrinsic evidence to preclude “confusion of the issues, harassment, endangerment to the
witness, needless delay, and the admissibility of highly prejudicial, repetitive and irrelevant or
marginally relevant evidence.” Rodriguez v. State, 934 S.W.2d 881, 885 (Tex. App.—Waco
1996, no pet.).
Application of Law to Facts
      Fowler fulfilled the first two requirements for showing that the employment probation
evidence is admissible. Botello could have lost his job if he had another violation, showing a
possible motive for testifying that Fowler had been the aggressor. Further, out of the presence
of the jury, Botello was informed of the possible bias and was given an opportunity to respond. 
He admitted that he had been placed on probation, but disputed the evidence that resulted in the
disciplinary action.
      However, the Court has discretion to determine the relevance and ultimate admissibility of
the evidence. Here, the issue is whether Fowler intentionally, knowingly, or recklessly caused
bodily injury to prison guard Botello. Tex. Pen. Code Ann. § 22.01(a)(1) (Vernon Supp. 2001). 
The case for which Botello was placed on probation did not involve Fowler, and Botello had
completed his probationary period more than a year before the incident with Fowler occurred. 
Any probative value of the probation evidence was outweighed by its prejudicial effect because
of the remoteness of the disciplinary action against Botello. Consequently, the evidence was not
relevant and had no bearing on the ultimate determination of Fowler’s guilt or innocence. 
Therefore, we conclude that the trial court did not abuse its discretion in the exclusion of evidence
pertaining to prior employment probation.
VOIR DIRE
      In his second issue, Fowler contends that he was denied effective assistance of counsel during
jury selection because the court limited the duration of his voir dire examination. Before
beginning the voir dire process, the court announced that jury selection would be completed that
afternoon. After Fowler’s counsel had taken about twice the time that the State had taken in
examining the panel (based on the number of pages in the record), the court announced: “All
right, ma’am, the hardest part just expired. And we thank you. And you can place your exception
in the record.” 
      The court then excused the venire panel from the courtroom so the parties could assert their
challenges for cause and exercise their peremptory challenges. At this time, Fowler’s counsel
objected to the curtailing of voir dire and told the court that additional questions were necessary
for intelligent selection of members of the jury. Specifically, she wanted to ask whether:
•any of the panelists knew any court personnel, witness or party in the cause;
•each of the panelists could find the defendant not guilty if the State proved a different
manner and means than alleged in the indictment;
•anyone had been a victim of a crime and the potential effect on ability to serve as a
juror;
•anyone considered himself a leader;
•anyone wanted to serve on a jury and why–or why not;
•anyone had been in a physical fight and its consequences; and
•each could acquit if the State failed to prove that Botello was lawfully discharging
his duties as a correctional officer.

Counsel asserted that each question should be asked of each veniremember. 

Applicable Law

      The trial court’s broad discretionary power to control the conduct of the voir dire examination
is well-established. McCarter v. State, 837 S.W.2d 117, 120 (Tex. Crim. App. 1990). This
discretion includes the ability to place reasonable limitations on the voir dire “for various reasons,
among them to curb the prolixity of what can be the lengthiest part of a criminal proceeding.” 
Guerra v. State, 771 S.W.2d 453, 467 (Tex. Crim. App. 1988). We review a court’s decision
to limit voir dire questioning according to an abuse-of-discretion standard. McCarter, 837 S.W.2d
at 120. Specifically, in reviewing a contention that the trial court abused its discretion in
terminating voir dire during collective questioning of the venire, we must examine: (1) whether
counsel attempted to prolong voir dire; and (2) whether the court prohibited proper questions. De
la Rosa v. State, 414 S.W.2d 668, 671 (Tex. Crim. App. 1967). If the court terminates voir dire
during questioning of individual panelists, then we also consider whether counsel was precluded
from examining jurors who served on the jury. Ratliff v. State, 690 S.W.2d 597, 599 (Tex. Crim.
App. 1985).
Application of Law to Facts
      The first issue is whether counsel attempted to prolong the voir dire. As we recently noted:
To decide whether counsel attempted to prolong the voir dire, we review the record to
see if the questions counsel posed were ‘irrelevant, immaterial or unnecessarily
repetitious.’ As a part of this analysis, we examine whether counsel appropriately
budgeted the time allotted for voir dire. (Cites omitted.)

Tamez v. State, 27 S.W.3d 668, 672 (Tex. App.—Waco 2000, no pet. h.).
      In this case, it appears that counsel did attempt to prolong the voir dire. The record of the
State’s voir dire is approximately thirty pages in length, while Fowler’s is almost twice that (about
fifty-four pages). Some of the questions asked were neither relevant nor material. For example,
counsel asked one veniremember: “What do we as a society value most?” Also, counsel used
much of her time in discussing general criminal concepts that had already been covered by the
court and State, such as burden of proof, presumption of innocence, and defendant’s right not to
testify. Counsel’s general method of presenting a concept and posing a question to only a few
individual panelists—rather than to the panel as a whole—tended to be time-consuming. While
we recognize that each counsel develops an individual style, counsel also has a duty to budget her
time appropriately for voir dire. Whitaker v. State, 653 S.W.2d 781, 781 (Tex. Crim. App.
1983). Had counsel better budgeted her time, she could have completed her questioning of the
panel. Because we find that counsel did prolong voir dire, we do not need to address the other
prongs of the abuse-of-discretion standard. See Tamez v. State, 27 S.W.3d 668 (Tex.
App.—Waco 2000, no pet. h.). Thus, we find that the court did not abuse its discretion by
limiting voir dire questioning. Accordingly, we overrule Fowler’s second issue.
CONCLUSION
      Having overruled both issues, we affirm the trial court’s judgment.
 
                                                                         TOM GRAY
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed April 25, 2001
Do not publish