Billy O Carter et al v. JEB Lease Service Inc., eta l.
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-034-CV

Â Â Â Â Â BILLY O. CARTER
Â Â Â Â Â AND MIKE STERNBERG,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellants
Â Â Â Â Â v.

Â Â Â Â Â JEB LEASE SERVICE, INC.,
Â Â Â Â Â MIDWAY OIL FIELD CONSTRUCTORS, INC.
Â Â Â Â Â AND C.P. BAILEY CONSTRUCTION CO., INC.,
Â Â Â Â Â D/B/A CENTEX SUPPLY,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees
 

From the 12th District Court
Madison County, Texas
Trial Court # 96-8156-012-06
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â In 1995, M.B. Properties, Inc. failed to pay debts owed to JEB Lease Service, Inc.,
Midway Oil Field Constructors, Inc., and C.P. Bailey Construction Co., Inc., d/b/a Centex
Supply. Centex asked Carter for help with its unpaid invoice. JEB sent its unpaid invoice to
Carter. Nothing was paid. In the meantime, M.B. took $50,000 from Tony Martin to
construct a commercial saltwater disposal well. The money was spent, but no well was
developed. Martin threatened to sue Carter and Sternberg individually for fraud. They settled
with Martin using all the assets of M.B. and some of their personal assets. There was nothing
left with which to pay the claims of the appellees.
Â Â Â Â Â Â The appellees sued M.B. and Carter and Sternberg, individually, for the unpaid debts for
services rendered and goods provided to M.B. They sued Carter and Sternberg individually
under the theory of alter ego. After a bench trial, the trial court found M.B. was the alter ego
of Carter and Sternberg. The court also found Carter and Sternberg liable to the appellees for
the unpaid invoices. Carter and Sternberg appeal.
Alter Ego
Â Â Â Â Â Â Disregarding the âlegal fiction of corporate entityâ is an exception to the general rule
which forbids disregarding corporate existence. Lucas v. Texas Industries, Inc., 696 S.W.2d
372, 374 (Tex. 1984). Alter ego is but one basis for disregarding the corporate fiction. 
Castleberry v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986). And the burden is on the
plaintiff to prove alter ego. Lucas, 696 S.W.2d at 375.
Law-Disregarding the Corporate Entity
Â Â Â Â Â Â Under the alter ego theory, courts disregard the corporate entity when there exists such
unity between corporation and individual that the corporation ceases to be separate and when
holding only the corporation liable would promote injustice. Mancorp, Inc. v. Culpepper, 802
S.W.2d 226, 228 (Tex. 1990); Castleberry, 721 S.W.2d at 272. An alter ego relationship may
be shown from the total dealings of the corporation and the individual. Id. This showing may
include evidence of "the degree to which corporate formalities have been followed and
corporate and individual property have been kept separately, the amount of financial interest,
ownership and control the individual maintains over the corporation, and whether the
corporation has been used for personal purposes." Id. (quoting Castleberry, 721 S.W.2d at
272).
Law-Legal Sufficiency
Â Â Â Â Â Â Carter and Sternberg only challenge the legal sufficiency of the courtâs implied findings
that M.B. was the alter ego of Carter and Sternberg. In conducting a legal sufficiency or no-evidence review, we must "view the evidence in a light that tends to support the finding of the
disputed fact and disregard all evidence and inferences to the contrary." Excel Corp. v
Apodaca, 81 S.W.3d 817, 820 (Tex. 2002); Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.
2001). We will uphold the finding if more than a scintilla of evidence supports it. Burroughs
Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Burleson State Bank v. Plunkett, 27
S.W.3d 605, 612 (Tex. App.âWaco 2000, pet. denied).
Evidence
Â Â Â Â Â Â Carter and Sternberg operated M.B. Properties. All corporate paperwork was kept up to
date. In 1995, M.B. incurred debts to the appellees. Those debts went unpaid. During the
same time period, M.B. also owed Tony Martin a commercial saltwater disposal well for
which Martin had paid M.B. $50,000.


 Martin threatened M.B., and Carter and Sternberg,
individually, with a lawsuit for fraud over the disposal well. According to Carter, Carter and
Sternberg put personal money into the corporation and then the corporation paid out that
money for a settlement. However, Martin testified they transferred personal assets in the form
of cash and M.B.âs interest in four wells for the settlement of Martinâs threatened claims
against Carter and Sternberg and against M.B. After the settlement with Martin, there were no
more assets in M.B. to pay the debts to the appellees. There was no evidence regarding the
allocation of payments or transfer of assets made to settle the various claims against M.B. or
individually against Carter and Sternberg.
Application
Â Â Â Â Â Â Although Carter and Sternberg may have kept themselves apart from M.B. initially, there
is some evidence they merged when Carter and Sternberg were threatened by, and settled with,
Martin. It does not matter which description of the transfer of money was accurate. Under
either version, the bottom line is that there is some evidence in the record that Carter and
Sternberg disregarded the separation of the corporate entity by transferring all M.B.âs assets to
settle claims that were, in part, against them personally. To then allow Carter and Sternberg to
shield themselves from liability to the appellees and hold M.B. only liable would result in an
injustice. There is more than a scintilla of evidence that M.B. was the alter ego of Carter and
Sternberg.
Â 

Conclusion
Â Â Â Â Â Â The trial court did not err in impliedly finding M.B. was the alter ego of Carter and
Sternberg. The trial courtâs judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Gray,
Â Â Â Â Â Â Justice Vance, and
Â Â Â Â Â Â Justice Reyna



(Justice Vance dissenting)
Affirmed
Opinion delivered and filed February 4, 2004
[CV06]



r curiam). Whether extraneous offense evidence has
relevance apart from character conformity, as required by Rule 404(b), is a
question for the trial courtÂ in its discretion.Â  Martin, 173 S.W.3d at
466 (quoting Moses, 105 S.W.3d at 627); accord Montgomery at 391
(op. on rehÂg).

Â Â Â Â Â  Defensive Issue.Â  First,
 Newton argues that the extraneous-offense evidence was not admissible to
rebut a defensive issue, as the State argued at trial that it was.Â  

Â Â Â Â Â  ÂRebuttal of a defensive theory .Â .Â .
is .Â .Â . one of the permissible purposes for which relevant evidence
may be admitted under Rule 404(b).ÂÂ  Moses, 105 S.W.3d at 626 (citing Crank
v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988), disavowed on other
grounds, Alford v. State, 866 S.W.2d 619, 624 (Tex. Crim. App. 1993)); see
Johnston v. State, 145 S.W.3d 215, 222 (Tex. Crim. App. 2004); Albrecht
v. State, 486 S.W.2d 97, 101 (Tex. Crim. App. 1972) (common law); Wingfield
v. State, 197 S.W.3d 922, 925 (Tex. App.ÂDallas 2006, no pet.); e.g.,
Wheeler, 67 S.W.3d at 886-87 (fabrication).

Â Â Â Â Â  A defensive issue can be
raised for purposes of Rule 404 otherwise than by evidence admitted by the
defense.Â  Â[E]xtraneous offenses are admissible to rebut defensive theories
raised by the testimony of a StateÂs witness during cross-examination.ÂÂ  Ransom
v. State, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994); accord Crank, 761
S.W.2d at 341; see Powell v. State, 63 S.W.3d 435, 437-39 (Tex. Crim.
App. 2001); Walker v. State, 201 S.W.3d 841, 852 (Tex. App.ÂWaco 2006,
pet. refÂd).Â  ÂThe mere fact that the stateÂs witness was crossexamined will
not, in and of itself, authorize the state to introduce evidence of extraneous
offenses.Â  Rather, it is the responses elicited from a stateÂs witness on
crossexamination which may allow the state to subsequently introduce extraneous
offense evidence.ÂÂ  Crank at 341 (citing Albrecht, 486 S.W.2d at
101-102); accord DeLeon v. State, 77 S.W.3d 300, 314 (Tex. App.ÂAustin
2001, pet. refÂd).Â  The defense may also raise a defensive theory in its
examination of the venire panel.Â  See Person v. State, No.
B14-91-00503-CR, 1993 Tex. App. LEXIS 1050, at *15 (Tex. App.ÂHouston [14th
Dist.] Apr. 8, 1993, no pet.) (not designated for publication).Â  

Â Â Â Â Â  The State argues that Newton raised the defensive issue that Doe fabricated her allegations, either out of her
own ill will toward him or at her motherÂs prompting, in his examination of the
venire panel, in cross-examination of the StateÂs witnesses, and in argument.[4]Â  The State points, and pointed in the trial
court, to NewtonÂs cross-examination of Doe.[5]Â  Much of that concerns general impeachment of
Doe by prior inconsistent statements; some of the cross-examination, however,
does tend to raise the issue of fabrication.Â  For example, Newton brought out
that Doe hated and had no respect for Newton, disliked that he was Âbossy,Â
resented that he came between her and her mother, felt better when she moved
away from him, and first alleged that he abused her after she learned that her
mother might reconcile with him.Â  (State Br. at 38 (citing 3 R.R. at 173).)

Â Â Â Â Â  The State also points to NewtonÂs voir-dire examination, in which he asked:

Do you think that someone isÂwhen I
say a ÂchildÂ in their teensÂdo you think someone in their teens is able to
make up a story thatÂs not true?Â  Does everybody agree with that?

Â Â Â Â Â  Do you think thatÂwe talked
aboutÂ[the State] talked about the reason why people donÂt make outcries is
because theyÂre scared to say something about it.Â  I forgot who said something,
but they basically said that a child can be manipulated not to tell what has
happened by an adult.

Â Â Â Â Â  The adult has
told them either by force or, you know, ÂThis will happen to you if you say
this.ÂÂ  But do you think the converse of that, do you think that basically an
adult can manipulate a child to say something?Â  When I say ÂchildÂÂagain,
teenagers.Â  Does everybody agree with that?

[sic] (2 R.R. at 103 (bracketed
alteration added).)[6]Â Â Â  

Â Â Â Â Â  The trial court was in a
position to observe NewtonÂs voir-dire examination and cross-examination, and
the responses of the panelists and witnesses, and the effect of those examinations
and responses on the jurors.Â  The trial court did not abuse its discretion in
finding that Newton raised the issue of DoeÂs fabricating her testimony.Â Â  

Â Â Â Â Â  Similarity.Â  Next, Newton argues that the extraneous offenses were not sufficiently similar to the offenses
of which he was convicted.Â  

Â Â Â Â Â  ÂTo be probative, the
extraneous offense evidence admitted to rebut a defensive theory must be
similar to the charged offense.ÂÂ  Blackwell v. State, 193 S.W.3d 1, 13
(Tex. App.ÂHouston [1st Dist.] 2006, pet. refÂd); see Wheeler, 67 S.W.3d
at 888.Â  

Â Â Â Â Â  Newton argues that Âthis Court should hold that the State must prove the extraneous offense
is similar enough to the charged offense to Âearmark [it] as the handiwork of
the accusedÂÂ .Â .Â .Â .ÂÂ  (Br. at 30 (quoting Owens v.
State, 827 S.W.2d 911, 914-15 (Tex. Crim. App. 1992)) (bracketed alteration
by Newton).)Â  Owens is distinguishable.Â  Owens concerned evidence
of Âsystem,Â that is, ÂÂmodus operandiÂ or Âmethodology,ÂÂ or Âa defendantÂs
distinctive and idiosyncratic manner of committing criminal acts,Â to prove the
defendantÂs identity.Â  Owens, 827 S.W.2d at 915; see id. at 916.Â 
Under Rule 404(b), Â[w]hen the State seeks to admit extraneous offense evidence
under a theory of ÂsystemÂ or modus operandi, Âthere must be a showing that the
extraneous offense which was committed by the defendant was Âso nearly
identical in method [to the charged offense] as to earmark them as the
handiwork of the accused.ÂÂÂÂ  Id. at 915 (quoting Collazo v.
State, 623 S.W.2d 647, 648 (Tex. Crim. App. 1981) (quoting E. Cleary, McCormickÂs Handbook of the Law of
Evidence 449 (2d ed. 1972))); see Moore v. State, 700 S.W.2d 193,
201 (Tex. Crim. App. 1985); Dickey v. State, 646 S.W.2d 232, 235 (Tex.
Crim. App. 1983).Â  To prove system, Âthe prior bad act Âmust be so
distinctively similarÂ to the present offense Âas to constitute a ÂsignatureÂ
act.ÂÂÂ  Qualley, 206 S.W.3d at 638 (quoting Johnston, 145
S.W.3d at 221 n.16 (internal footnote omitted)); see Bishop v. State, 869
S.W.2d 342, 346 (Tex. Crim. App. 1993).Â  

Â Â Â Â Â  But whether extraneous
offenses are sufficiently similar to charged offenses to be admissible is a
matter of degree.Â Â  For example, Âthe degree of similarity required is not so
great where intent is the material issueÂ that the extraneous offenses rebut
Âas when identity is the material issue, and extraneous offenses are offered to
prove modus operandi.ÂÂ  Cantrell v. State, 731 S.W.2d 84, 90 (Tex. Crim.
App. 1987); cf. Owens, 827 S.W.2d at 914-15.Â  The degree of similarity
required to rebut a defensive issue, likewise, is not great.Â  See Blackwell,
193 S.W.3d at 13; Dennis v. State, 178 S.W.3d 172, 178-79
(Tex. App.ÂHouston [1st Dist.] 2005, pet. refÂd).Â  For example, in Mendiola
v. Texas, the trial court admitted extraneous offenses in part to rebut
MendiolaÂs defense that Mendiola was impotent and thus incapable of committing
the charged offense.Â  Mendiola v. State, 995 S.W.2d 175, 178-81 (Tex.
App.ÂSan Antonio 1999), revÂd on other grounds, 21 S.W.3d 282 (Tex.
Crim. App. 2000).Â  There, in order to rebut that defense, the extraneous
offenses need only tend to prove that Mendiola was not impotent.Â  The probative
value of the extraneous offenses did not flow from their close factual
similarity to the charged offense, but only from their force to prove that the
defendant was not impotent.Â  Likewise, the probative value of NewtonÂs
extraneous offenses to rebut circumstantially NewtonÂs fabrication issue does
not flow from a close similarity to the charged offenses.

Â Â Â Â Â  The State pointed primarily to
the evidence that Newton sexually assaulted both stepdaughters when they were
about the same age and that the abuse continued as long as Newton was in the
home.Â  If the jury believed that Newton committed those extraneous offenses,
that would make it more probable that Doe was not fabricating her allegations
against Newton.Â  The trial court did not abuse its discretion in finding that
the extraneous offenses were not so dissimilar from the charged offenses as to
be without probative value.Â  

Â Â Â Â Â  Remoteness.Â  Lastly, Newton argues that the extraneous offenses were Âtoo remote to have any probative value.ÂÂ 
(Br. at 34.)Â  

Â Â Â Â Â  However, ÂRule 404 imposes no
time limitations .Â .Â .Â .ÂÂ  Hernandez v. State, 203 S.W.3d
477, 480 (Tex. App.ÂWaco 2006, no pet.).Â  Rather, the Rules of Evidence Âfavor
the admission of all logically relevant evidence for the juryÂs
consideration.ÂÂ  Montgomery, 810 S.W.2d at 376 (op. on orig.
submission); accord Hernandez at 480; Prince v. State, 192 S.W.3d
49, 55 (Tex. App.ÂHouston [14th Dist.] 2006, pet. refÂd).

Â Â Â Â Â  The cases cited by Newton are distinguishable.Â  With the exception of one case, all of the cases cited by Newton were decided under the common law of evidence that existed prior to the adoption of
the Rules of Evidence, which common law Âtended to favor the exclusion of
evidence.ÂÂ  Montgomery, 810 S.W.2d at 375 (op. on orig.
submission); see Prince, 192 S.W.3d at 55; e.g. Messenger v. State, 638
S.W.2d 883 (Tex. Crim. App. [Panel Op.] 1982).Â  The other case, assuming that
it was correctly decided, concerned extraneous-offense evidence admitted to
prove system, which, for the reasons stated above, requires a high degree of
similarity; and was decided under Rule of Evidence 403, not Rule 404.Â  See
Reyes v. State, 69 S.W.3d 725, 740 (Tex. App.ÂCorpus Christi 2002, pet.
refÂd).

Â Â Â Â Â  The trial court did not abuse
its discretion in finding that the remoteness of the extraneous offenses did
not render them without probative value.

Â Â Â Â Â  The trial court did not abuse
its discretion in overruling NewtonÂs objection under Rule 404.[7]Â  We overrule NewtonÂs second issue.

Â Â Â Â Â  Rule 403.Â  In
 NewtonÂs third issue, he argues under Rule of Evidence 403.[8]Â  See Tex.
R. Evid. 403.Â  Under that rule, ÂAlthough relevant, evidence may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative
evidence.ÂÂ  Id.Â  We understand Newton to argue unfair prejudice.Â 
ÂÂ[U]nfair prejudiceÂ refers to Âan undue tendency to suggest decision on an
improper basis, commonly, though not necessarily, an emotional one.ÂÂÂ  Erazo
v. State, 144 S.W.3d 487, 501-502 (Tex. Crim. App. 2004) (quoting Rogers
v. State, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999)); accord Cohn
v. State, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993).

Â Â Â Â Â  Â[A] trial court is entitled
to broad discretion in ruling on a Rule 403 objection.ÂÂ  State v. Mechler, 153
S.W.3d 435, 439 (Tex. Crim. App.Â  2005) (citing Manning v. State, 114
S.W.3d 922, 926 (Tex. Crim. App. 2003)); accord Powell v. State, 189
S.W.3d 285, 288 (Tex. Crim. App. 2006); Martin, 173 S.W.3d at 467; Montgomery,
810 S.W.2d at 391-93 (op. on rehÂg).Â  Â.Â .Â . Rule 403Âs Âuse of
the word ÂmayÂ reflects the draftsmanÂs intent Âthat the trial judge be given a
very substantial discretion in ÂbalancingÂ probative value on the one hand and
Âunfair prejudiceÂ on the other, and that he should not be reversed simply
because an appellate court believes that it would have decided the matter
otherwise.ÂÂÂÂ  Powell, 189 S.W.3d at 288 (quoting Manning
at 926).

Â Â Â Â Â  [A] Rule 403 analysis should include, but
is not limited to, the following factors:

Â Â Â Â Â  (1)Â  how probative the evidence is;

Â Â Â Â Â  (2)Â  the potential of the evidence to
impress the jury in some irrational, but nevertheless indelible way;

Â Â Â Â Â  (3)Â  the time the proponent needs to
develop the evidence; and

Â Â Â Â Â  (4)Â  the proponentÂs need for the
evidence.

Shuffield, 189 S.W.3d at 787 (quoting Montgomery,
810 S.W.2d at 389-90 (op. on rehÂg)) (alteration added); see Powell, 189
S.W.3d at 287.

Â Â Â Â Â  As to the second factor,
Â[b]oth sexually related misconduct and misconduct involving children are
inherently inflammatory.ÂÂ  Montgomery, 810 S.W.2d at 397 (op. on
rehÂg); accord Bishop, 869 S.W.2d at 346; Whitmire v. State, 183
S.W.3d 522, 529 (Tex. App.ÂHouston [14th Dist.] 2006, no pet.); Rickerson v.
State, 138 S.W.3d 528, 532 (Tex. App.ÂHouston [14th Dist.] 2004, pet
refÂd).Â  In evaluating the prejudicial effect of evidence, we take into account
whether the trial court gave an instruction limiting the juryÂs consideration
of the evidence to its proper purpose.Â  Blackwell, 193 S.W.3d at 16-17; Dennis,
178 S.W.3d at 181.Â  We also consider whether the parties argued that the
jury could only consider the evidence for its proper purpose.Â  Blackwell at
17.

Â Â Â Â Â  As to the third factor, Â[t]he
potential for unfair prejudice occurs if the State spends an undue amount of
time presenting the extraneous offense to the jury.ÂÂ  Dennis, 178 S.W.3d
at 181 n.2.Â  

Â Â Â Â Â  As to the fourth factor,
Â[t]here are three questions that the reviewing court should
answerÂ .Â .Â .Â : Â[1]Â Does the proponent have other
available evidence to establish the fact of consequence that the [evidence] is
relevant to show?Â  [2]Â If so, how strong is that other evidence?Â  And
[3]Â is the fact of consequence related to an issue that is in dispute?ÂÂÂ  Erazo,
144 S.W.3d at 496 (quoting Montgomery, 810 S.W.2d at
390 (op. on rehÂg)) (bracketed numerals added); accord Reese v. State, 33
S.W.3d 238, 242 (Tex. Crim. App. 2000).

Â Â Â Â Â  As to the extraneous-offense
evidenceÂs probative value, for the reasons stated above, although the evidence
did not tend to disprove fabrication directly, it tended circumstantially to
prove that Doe did not fabricate her allegations.Â  As to the evidenceÂs
prejudicial effect, the trial court carefully instructed the jury on the
circumstances under which and the purpose for which the jury could consider the
evidence, in limiting instructions both immediately after the witness
testified, and in the trial courtÂs charge.Â  Moreover, both parties argued to
the jury that it could not consider the evidence apart from those circumstances
and for that purpose.Â  As to the time that the State needed to develop the
evidence, Newton argues that it was extensive.Â  Newton points to bench
conferences on the admissibility of the evidence, to L.Â D.Âs testimony
generally, to the testimony of a witness apparently called to bolster
L.Â D.Âs credibility, to NewtonÂs general cross-examination of L.Â D.,
and to NewtonÂs direct examination of one of his witnesses.Â  We do not
attribute such matters to the State, as proponent of the evidence, in
developing the extraneous-offense evidence.Â  The StateÂs presentation of the
testimony of which Newton complains was brief.Â  As to the StateÂs need for the
extraneous-offense evidence, Newton does not point to direct evidence tending
to disprove NewtonÂs fabrication issue, and the State points to the lack of
evidence corroborating DoeÂs testimony.

Â Â Â Â Â  On those factors, the trial
court did not abuse its discretion in finding that the prejudicial effect of
the extraneous-offense evidence did not substantially outweigh the evidenceÂs
probative value.Â  The trial court did not err in overruling NewtonÂs Rule 403
objection.[9]Â  We overrule NewtonÂs third issue.

ouHoust

Â Â Â Â Â  CONCLUSION.Â 
Having overruled NewtonÂs issues, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

Â Â Â Â Â  Justice Vance, and

Â Â Â Â Â  Justice Reyna

Â Â Â Â Â  (Justice Vance concurs in the judgment
with a note)*

Affirmed

Opinion delivered and filed March 28, 2007

Do not publish

[CRPM]

Â 

Â Â Â Â Â Â Â Â Â  *
Â(I concur in affirming the trial courtÂs judgment.Â  I would, however, address NewtonÂs argument that Bass v. State, 2007 WL 703761, at *2-6 (Tex. App.ÂHouston [14th Â Dist.] March 8, 2007, no pet. h .), prohibits the use of extraneous-offense
evidence to rebut a claim of fabrication.)Â









Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  [1]Â The indictment alleged that Newton committed aggravated sexual
assault by Âcaus[ing] the penetration of the female sexual organ of Jane Doe
.Â .Â . by inserting his finger.ÂÂ  (I C.R. at 1.)Â  Newton does not
contend that indecency with a child constitutes a lesser included offense of
aggravated sexual assault of a child under those facts.Â  Cf. Ochoa v.
State, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); Murray v. State, 24
S.W.3d 881, 889 (Tex. App.ÂWaco 2000, pet. refÂd).





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  [2]Â We would, moreover, affirm on another ground.Â  Â[W]e will uphold a
trial courtÂs ruling on any theory of law applicable to the case
.Â .Â .Â .ÂÂ  State v. Ross, 32 S.W.3d 853, 854 (Tex. Crim.
App. 2000); accord Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim. App.
2005); Holden v. State, 205 S.W.3d 587, 589 (Tex. App.ÂWaco 2006, no
pet.); see Hailey v. State, 87 S.W.3d 118, 121-22 (Tex. Crim. App.
2002).Â  The testimony would be admissible under the hearsay exception for
statements for purposes of medical diagnosis or treatment.Â  See Tex. R. Evid. 803(4); Molina v.
State, 971 S.W.2d 676, 683-84 (Tex. App.ÂHouston [14th Dist.] 1998, pet.
refÂd); Gohring v. State, 967 S.W.2d 459, 461-63 (Tex. App.ÂBeaumont
1998, no pet.); Macias v. State, 776 S.W.2d 255, 258-59 (Tex. App.ÂSan
Antonio 1989, pet. refÂd); In re M.M.L., No. 07-05-0240-CV, 2006 Tex.
App. LEXIS 6783, at *9-*10 (Tex. App.ÂAmarillo July 31, 2006, pet. filed)
(juvenile adjudication); Syndex Corp. v. Dean, 820 S.W.2d 869, 873-74
(Tex. App.ÂAustin 1991, writ denied).Â  





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  [3]Â Further, were we to hold that the trial court erred, we would,
after examining the record as a whole, find that we have a fair assurance that
the error did not influence the jury or had but a slight effect, and thus hold
that the error was harmless.Â  See Tex.
R. App. P. 44.2(b); Renteria v. State, 206 S.W.3d 689, 706 n.14
(Tex. Crim. App. 2006); McDonald v. State, 179 S.W.3d 571, 578 (Tex.
Crim. App. 2005); Shuffield, 189 S.W.3d at 791; Haley v. State, 173
S.W.3d 510, 518 (Tex. Crim. App. 2005); Hanson, 180 S.W.3d at 730.Â  Doe,
eighteen years old at the time of trial, testified clearly to NewtonÂs
offenses.Â  Newton concedes that DoeÂs testimony was ÂcompellingÂ and his
attempted impeachment of her Âinefficacious,Â and that the evidence of his
guilt was Âpowerful.ÂÂ  (Br. at 40.)





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  [4]Â Newton argues that
the State ÂwaivedÂ its argument that the evidence of which he complains served
to rebut the defensive theory that he Âwas the [v]ictim of a [f]rame-up.ÂÂ  (Br. at 21; see id. at 21-22.)Â  Newton does not argue that the State waived the
StateÂs fabrication argument.Â  We do not perceive the two arguments to be
distinct.





Â Â Â Â Â Â Â Â Â Â Â  [5]Â Newton argues that his
cross-examination was Âconfined to issues brought up on direct examination
.Â .Â . by the State.ÂÂ  (Br. at 24.)Â  If that contention is correct, Newton cites no authority for the proposition that such cross-examination could not raise
a defensive issue.





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  [6]Â Newton advanced the
issue more directly in his argument.Â  There, Newton suggested that Doe
fabricated the allegation against Newton in order to prevent her motherÂs
reconciliation with Newton, or did so at the prompting of her mother, since Doe
made her allegation immediately before her mother filed for divorce from Newton.Â  (See 6 R.R. at 104-110.)





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  [7]Â Further,
were we to hold that the trial court erred, we would hold, after examining the
record as a whole, that we have a fair assurance that the error did not
influence the jury or had but a slight effect, and thus that the error was harmless.Â 
See Tex. R. App. P.
44.2(b); Renteria, 206 S.W.3d at 706 n.14; McDonald, 179 S.W.3d
at 578; Shuffield, 189 S.W.3d at 791; Haley, 173 S.W.3d at 518; Johnston,
145 S.W.3d at 224-25; Hanson, 180 S.W.3d at 730.Â  Doe testified
clearly to NewtonÂs offenses.Â  Newton concedes that DoeÂs testimony was
ÂcompellingÂ and his attempted impeachment of her Âinefficacious,Â and that the
evidence of his guilt was Âpowerful.ÂÂ  (Br. at 40.)





Â Â Â Â Â Â Â Â Â Â Â  [8]Â We assume without
deciding that Newton preserved his Rule 403 objection: ÂWeÂre going to throw in
more prejudicial than probative.ÂÂ  (4 R.R. at 68); see Tex. R. App. P. 33.1(a).Â  Nonetheless,
the trial court stated, Âthe 403, IÂm considering that at the same timeÂ as the
Rule 404 objection.Â  (4 R.R. at 90.)





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  [9]Â Further, were we to hold that the trial court erred, we would hold,
after examining the record as a whole, that we have a fair assurance that the
error did not influence the jury or had but a slight effect, and thus that the
error was harmless.Â  See Tex. R.
App. P. 44.2(b); Renteria, 206 S.W.3d at 706 n.14; Shuffield, 189
S.W.3d at 791; McDonald, 179 S.W.3d at 578; Prible, 175 S.W.3d at
737; Haley, 173 S.W.3d at 518; Hayes v. State, 85 S.W.3d 809, 816
(Tex. Crim. App. 2002); Hanson, 180 S.W.3d at 730; Williams v. State,
27 S.W.3d 599, 603 (Tex. App.ÂWaco 2000, pet. refÂd); see Horton v.
State, 986 S.W.2d 297, 303-304 (Tex. App.ÂWaco 1999, no pet.).Â  Doe
testified clearly to NewtonÂs offenses.Â  Newton concedes that DoeÂs testimony
was ÂcompellingÂ and his attempted impeachment of her Âinefficacious,Â and that
the evidence of his guilt was Âpowerful.ÂÂ  (Br. at 40.)Â  The State argued that
the jury could consider L.Â D.Âs testimony for its bearing on DoeÂs
credibility, but did not otherwise emphasize the testimony, and did not argue
that the jury should find Newton guilty directly because of NewtonÂs offenses
against L.Â D.Â  The trial court did not admit evidence of other extraneous
offenses, and did give careful limiting instructions.